**Dorothy Jean MILLER–EL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 05–86–00955–CR, 05–86–00956–CR.**

Court of Appeals of Texas,
Dallas.

April 19, 1990.

Rehearing Denied May 21, 1990.

1. The parties do not present the issue of the validity or viability of appellant's parole.

John Hagler, Dallas, for appellant.

Constance M. Maher, Fort Worth, for appellee.

Before WHITHAM, THOMAS and KINKEADE[1], JJ.

## OPINION ON REMAND

KINKEADE, Justice.

Dorothy Jean Miller-El, an African-American, appeals her conviction for the offenses of murder and attempted capital murder. The jury assessed punishment in each cause at confinement for life in the Texas Department of Corrections, and the trial court ordered that the sentences run consecutively. On appeal, Miller-El contended in her third point of error that the trial court erred in overruling her objection to the prosecutor's use of the State's peremptory strikes to exclude African-Americans from the jury. This Court did not decide that issue because we reversed Miller-El's conviction on other grounds. The Court of Criminal Appeals reversed our judgment and ordered that we decide Miller-El's third point of error. 782 S.W.2d 892. Because we find that the prosecutor exercised the State's peremptory challenges on the basis of race, we reverse the trial court's judgment and remand these causes to the trial court for further proceedings.

## FACTS

The record shows that the original venire consisted of fifty members, including seven alternate jurors. The attorneys did not subject the alternate jurors to extensive questioning during *voir dire* examination because the attorneys did not anticipate that they would need those jurors, and, in fact, did not need them. Of the forty-three venire members subjected to extensive *voir dire* examination, seven were African-Americans. On the motion of appellant, Dorothy Jean Miller-El, the trial court excused two African-American venire members for cause, one because she could not consider probation, and the other because several members of her family had been victims of violent crime and she did not feel that she could be impartial. The impaneled jury consisted of six females (five white and one Hispanic) and six males (five white and one Hispanic). Miller-El timely objected to the jury selection, contending that the prosecutor used five of the State's ten peremptory strikes to exclude the remaining five African-American venire members, and requested the trial court to order the State to justify the strikes. The trial court noted that the jury panel had no African-American jurors and requested the prosecutor to justify his use of the State's per-

---

1. The Honorable Ed Kinkeade, Justice, succeeded the Honorable John L. McCraw, Justice, a member of the original panel, upon Justice McCraw's resignation effective December 19, 1986. Justice Kinkeade has reviewed the briefs and the record before the court.

emptory strikes to exclude the five African–American venire members. The prosecutor stated his reasons and the trial court ruled that the State did not exclude the venire members on the basis of race.

## THE *PRIMA FACIE* SHOWING OF PURPOSEFUL DISCRIMINATION

■ The Equal Protection Clause forbids a prosecutor from challenging potential jurors on the basis of their race or on the assumption that jurors who belong to a particular racial group cannot impartially consider the State's case against a member of their own race. In order to establish a *prima facie* case of purposeful discrimination in selection of the jury panel, a defendant must show that (1) he belongs to a cognizable racial group, (2) the prosecutor exercised peremptory challenges to remove members of defendant's race, and (3) the facts and circumstances raise an inference that the prosecutor used the practice to exclude venire members because of their race. *Batson v. Kentucky*, 476 U.S. 79, 96, 106 S.Ct. 1712, 1722–23, 90 L.Ed.2d 69 (1986). The defendant can rely on the fact that peremptory challenges constitute a jury selection practice that permits those to discriminate who have a mind to discriminate. Once a defendant makes a *prima facie* showing of purposeful discrimination in selection of the jury panel, the burden shifts to the State to come forward with a neutral explanation for challenging particular jurors. *Batson*, 476 U.S. at 96–97, 106 S.Ct. at 1722–23.

■ The trial court implicitly found that Miller–El made a *prima facie* showing of purposeful discrimination because the trial judge required the prosecutor to explain why he exercised his peremptory strikes to exclude African–American venire members. We find that the record supports that finding because the prosecutor used five of the State's ten peremptory strikes to exclude five of seven potential African–American jurors, raising an inference of discrimination. We turn to a review of the trial court's determination that the State did not exercise its peremptory strikes for the purpose of excluding venire members of Mil-

ler–El's race. *See Tompkins v. State*, 774 S.W.2d 195, 201 (Tex.Crim.App.1987).

## THE STATE'S BURDEN

■ After a defendant establishes a *prima facie* case of purposeful discrimination, a presumption exists that the State struck the African–American venire members on the basis of race. The State then has the burden to articulate a clear, specific, legitimate and racially neutral reason for exercising the strike. However, this showing need not rise to the level of a challenge for cause. *Keeton v. State*, 749 S.W.2d 861, 867–68 (Tex.Crim.App.1988) (*Keeton II*). Evidence that the State can use to overcome the presumption of discrimination includes a showing that (1) the State challenged jurors other than the African–American jurors with the same or similar characteristics as the African–American jurors, and (2) the State did not use a "pattern" of strikes to challenge African–American jurors. *Keeton II*, 749 S.W.2d at 868. The State cannot meet this burden on mere general assertions that its officials did not discriminate or that they properly performed their official duties. Rather, the State must demonstrate that it used permissible racially neutral selection criteria and procedures to select the jurors. *Keeton II*, 749 S.W.2d at 868.

After Miller–El objected to the State's jury selection, the trial court requested that the State explain its challenges of the five African–American venire members. The prosecutor stated as follows:

> THE COURT: I think the first [excluded African–American juror] would be number fourteen, Mr. Boykin ...
>
> [THE PROSECUTOR]: Mr. Boykin is not on the jury for the simple reason that he has a beard and I don't like men on juries that have beards. I've been burned by them repeatedly. I probably won't have another man on a jury that has a beard.
>
> THE COURT: Who is the next one ...
>
> [DEFENSE COUNSEL]: Ms. Alexander.
>
> [THE PROSECUTOR]: She is not on the jury because she appears to have three illegitimate children. She's unemployed.

The only job she has ever had was as a grill cook at Tony Roma's and that's why I struck her. That same reason would be true of a couple more of these.

....

THE COURT: Number twenty-two is the next black, Ms. McCoy ...

[THE PROSECUTOR]: Well, number twenty-two is just like number fifteen up here. She has an illegitimate child at home and that's why I struck her. I think there is one more just like that. There is not anybody on the jury panel that I'm aware of that has any illegitimacy—on the jury that have any illegitimate children. At least it is not obvious on the documents they filled out.

....

THE COURT: Ms. Shofner is next.

[THE PROSECUTOR]: Ms. Shofner, also has what appears to be an illegitimate child at home. She's single and there is not any indication she is married or divorced. She is the lady, I believe, that the voir dire record will show who says that prior to this job at the Balch Spring [sic] Nursing Home, she had two more but she really couldn't remember where they were or what she was doing when she worked for those places. I quite frankly wasn't impressed with her.

[DEFENSE COUNSEL]: Juror number forty-three.

[THE PROSECUTOR]: That's the young widow who is apparently recently widowed. She says that she has an eight-month old child at home and another child who is two or three. She just got either laid off or fired or the company went out of business after seven and a half years and she's only been on the new job for two and a half months. I struck her really because of the young child at home, widowed, and the two and a half months. I think the voir dire record will note that we agreed to excuse several people because of business hardships. There was one lady in particular that—

[DEFENSE COUNSEL]: This woman did not ask for an excuse. She wanted to serve on this jury and he struck her because she is black. Five out of ten strikes were black people and the basis for those are illegitimate children. Now, here's one who has legitimate children, but he's telling the Court that he struck her because she had children at home. I'm sorry, Judge. There are other people on this panel that have children at home and they weren't struck, but those people are white.

[THE PROSECUTOR]: Those are the State's reasons. I'm sure [the defense counsel] is not pleased with them, but there is nothing I can do about it.

[DEFENSE COUNSEL]: Let me point out to the Court, please, Your Honor, that there are other people on this jury panel—if you will give me an opportunity to go through it—who are women who are at home and who have children that were not struck by the State and I would submit to the Court that none of these are based on any of the reasons that the State has given to you. There are people on this jury—men with facial hair.

[THE PROSECUTOR]: We would love for [the defense counsel] to show us one young lady on the jury panel who is widowed and has a child at home. She can't do it because there are none.

THE COURT: Did the [State] exercise any strikes on a racial basis ... ?

[THE PROSECUTOR]: The State did not make any strikes on a racial basis.

[DEFENSE COUNSEL]: Your Honor, may I ask since this is an evidentiary question—are you telling the Court and the Court of Appeals that one-half of your possible potential strikes were black and it's just coincidence?

[THE PROSECUTOR]: That's right.

THE COURT: Anything else, [defense counsel]?

[DEFENSE COUNSEL]: That's all.

THE COURT: Of course, the voir dire was taken, so in reference to what [the prosecutor] said—I didn't frankly make as detailed notes as he may have or you did, [defense counsel]. I'm going to deny your objection, if it is styled as an objection. I'm going to find that the strikes were not exercised on a racial basis as I

understand the Batson case and it's fairly new territory.

After the trial court denied Miller–El's objection and at the defense counsel's request, the court included the juror information list in the record.

## REVIEW OF THE TRIAL COURT'S FINDING

### 1. The Standard of Review

■ An appellate court must consider the evidence in the light most favorable to the trial judge's rulings and determine whether sufficient evidence supports those rulings. If the record supports the trial court's findings, we will not disturb them on appeal. *Keeton II*, 749 S.W.2d at 868. We must also keep in mind that the defendant has the burden to persuade the trial judge by a preponderance of the evidence that the allegations of purposeful discrimination are true in fact. *Tompkins*, 774 S.W.2d at 202.

■ Trial judges experienced in supervising *voir dire* examinations should be able to determine if the circumstances concerning the prosecutor's use of peremptory challenges create a *prima facie* case of discrimination against African–American jurors. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723. By largely judging the credibility of the prosecutor, the content of the explanation and all the other surrounding facts and circumstances, the trial judge must make a finding of fact concerning purposeful discrimination to which a reviewing court should give great deference. *Batson*, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21; *Keeton v. State*, 724 S.W.2d 58, 65 (Tex. Crim.App.1987) (*Keeton I*). The trial judge must examine each of the prosecutor's reasons for striking a potential African–American juror within the circumstances of the particular case to determine whether the State gave a "neutral explanation" for a strike as a pretext for a racially motivated peremptory challenge. *Keeton II*, 749 S.W.2d at 868. In making this determination, the trial judge must ascertain whether the prosecutor articulated a "clear and reasonably specific" explanation

of "legitimate reasons" for striking each African–American venire member. *Batson*, 476 U.S. at 97–98 n. 20, 106 S.Ct. at 1724 n. 20. The trial judge cannot merely accept the specific reasons given by the prosecutor at face value, but must consider whether the prosecutor contrived the racially neutral explanations to avoid admitting acts of group discrimination. The trial judge must make such an evaluation because an attorney, although not intentionally discriminating, may try to find reasons other than race to challenge an African–American juror when race may be his primary factor. *Keeton II*, 749 S.W.2d at 868.

■ Conversely, once the prosecutor gives a racially neutral explanation that can legally support a judgment in the State's favor, he presents a fact issue that the trial judge can resolve only by assessing the weight and credibility of the evidence. *Tompkins*, 774 S.W.2d at 202. The defendant bears the ultimate burden of proving that the prosecutor exercised the State's peremptory strikes in a discriminatory fashion. *See Tompkins*, 774 S.W.2d at 202; *Branch v. State*, 774 S.W.2d 781, 782–83 (Tex.App.—El Paso 1989, no pet.). We must determine whether sufficient evidence exists to support the trial judge's finding that the prosecutor did not discriminate.

### 2. Facts Shown at the Batson Hearing

■ The record shows that after Miller–El struck two African–American venire members for cause, the prosecutor used five of the State's ten peremptory challenges to strike the remaining five African–American venire members. The prosecutor's use of the State's peremptory strikes constituted a "pattern" of strikes used to exclude the remaining African–American venire members from the jury panel. When asked by the defense counsel if this result was "just coincidence," the prosecutor responded, "[t]hat's right." We must now determine whether the prosecutor gave specific, racially neutral reasons for striking the African–American jurors, and, if so, whether he contrived those rea-

sons to avoid admitting acts of discrimination.

The prosecutor struck jurors Alexander and Shofner at least in part because they had illegitimate children. The prosecutor stated that he struck juror McCoy for the sole reason that she had illegitimate children, and that he struck juror Clay, a widow with two young children, because she had been employed less than three months. He stated that he excused her, and agreed to excuse several other jurors, because of business hardship. The juror information list shows that four of the female venire members who served on the jury panel had children, and three of those jurors also held jobs. The list also shows that juror Reina, who served on the jury panel, had held her job only two weeks. The record shows that the trial court excused three venire members for hardship and refused to excuse a fourth, juror Spitler, who so requested. Juror Clay did not request to be excused for any reason.

Evidence of disparate treatment of a juror, such as when the State does not strike persons with the same or similar characteristics as the challenged juror, weighs heavily against the legitimacy of a racially neutral explanation given by the State. A prosecutor's racially neutral explanation for striking an African–American juror may be evidence of a sham or pretext if the stated reason bears no relation to the facts of the case. *Keeton II,* 749 S.W.2d at 868. The prosecutor struck three of the four female African American venire members, at least in part, because they had illegitimate children. Although the fourth female African–American venire member, juror Clay, apparently had legitimate children, the prosecutor stated that he struck her because service on the jury would have imposed a business hardship on her. He based his conclusion on the facts that juror Clay had held her job less than three months and had young children at home. However, he did not ask her if jury service would cause her hardship, and she did not ask to be excused. The trial court excused three venire members who so requested. The jury panel consisted of four females

with children, and three of those jurors held jobs. One such juror, Reina, had held her job only two weeks. Another such juror, Spitler, requested to be excused for business hardship and the trial court refused. The prosecutor's stated reason for striking juror Clay bore no relation to the facts of the case, and he did not strike other jurors with the same or similar characteristics. Insufficient evidence exists in the record to support the trial court's finding that the State did not strike juror Clay on the basis of her race. We hold that Miller–El met her burden to prove by a preponderance of the evidence that the State's use of business hardship as a reason to strike juror Clay constituted a sham or pretext, and that the prosecutor struck her because of her race. *See Keeton II,* 749 S.W.2d at 868.

The exclusion of even one member of Miller–El's race from the jury panel for a racial reason invalidates the entire jury selection process and requires reversal. *See Batson,* 476 U.S. at 100, 106 S.Ct. at 1725; *Keeton II,* 749 S.W.2d at 871 n. 1 (Teague, J., concurring). We reverse the trial court's judgment and remand these causes to the trial court for further proceedings.