

# IN THE
# TENTH COURT OF APPEALS

### No. 10-09-00249-CR

**DEMESTRA UNDRA ROSS,**

                                      **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                      **Appellee**

### From the 85th District Court
### Brazos County, Texas
### Trial Court No. 08-01827-CRF-85

## MEMORANDUM OPINION

Demestra Undra Ross appeals from his conviction by a jury for two counts of aggravated robbery, for which he was sentenced to prison for sixty (60) years. TEX. PEN. CODE ANN. § 29.03 (Vernon 2003). Ross complains that the trial court erred by denying his motion pursuant to *Batson v. Kentucky* and article 35.261 of the Code of Criminal Procedure regarding one African-American juror that was struck by the State at the conclusion of voir dire. Because we find no error, we affirm the judgment of the trial court.

*Batson Challenge*

In his first issue, Ross contends that the trial court erred in overruling his *Batson* challenge to one venireperson, Heslip. *See Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). *Batson* provides a three-step process for a trial court to use in adjudicating a claim that a peremptory challenge was based on race. *Snyder v. Louisiana*, 552 U.S. 472, 128 S. Ct. 1203, 1207, 170 L. Ed. 2d 175 (2008). "'First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race[; s]econd, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question[; and t]hird, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.'" *Id*. (*quoting Miller-El v. Dretke*, 545 U.S. 231, 277, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2006) (Thomas, J., dissenting)). The exclusion of even one member of Ross's race from the jury panel for racial reasons invalidates the entire jury selection process. *See Snyder*, 128 S. Ct. at 1208.

If the opponent of a challenged strike raises a question of purposeful discrimination and the trial court proceeds immediately to the State's race-neutral reasons for the strike, a reviewing court assumes that the opponent has satisfied the first step of the Batson process. *Watkins v. State*, 245 S.W.3d 444, 447 (Tex. Crim. App. 2008) (*citing Hernandez v. New York*, 500 U.S. 352, 359, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991)). The second step of the process does not demand an explanation that is persuasive, or even plausible. *Purkett v. Elem*, 514 U.S. 765, 768, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995). The issue is the facial validity of the prosecutor's explanation. *Id.* Unless a

discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. *Id*. (*quoting Hernandez*, 500 U.S. at 360.

It is not until the third step that the persuasiveness or the justification of the strike becomes relevant. *Id*. "At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Id*. The prosecutor's proffered reasons for striking an individual must be evaluated in light of the circumstances of the case. *See Snyder v. Louisiana*, 552 U.S. 472, 128 S. Ct. 1203, 1210, 170 L. Ed. 2d 175 (2008). On appeal, a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous. *Snyder*, 128 S. Ct. at 1207; *Watkins v. State*, 245 S.W.3d 444, 448 (Tex. Crim. App. 2008).

### Clearly Erroneous Standard

To hold that a fact-finder's decision was "clearly erroneous," the record must leave us with a "definite and firm conviction that a mistake has been committed." *Hill v. State*, 827 S.W.2d 860, 865 (Tex. Crim. App. 1992); *see also Hernandez v. New York*, 500 U.S. 352, 369, 111 S. Ct. 1859, 1871, 114 L. Ed. 2d 395 (1991) (holding that a trial court's finding will not be disturbed unless the appellate court is "'left with a definite and firm conviction that a mistake has been committed'") (internal citation omitted).

"We review the record of a *Batson* hearing and the voir dire examination in the light most favorable to the trial court's ruling." *Young v. State*, 283 S.W.3d 854, 866 (Tex. Crim. App. 2009) (en banc). We must give great deference to credibility and demeanor determinations made by the trial court in connection with a *Batson* inquiry. *Snyder*, 552 U.S. at 477-79, 128 S. Ct. at 1208 (observing that "the best evidence of discriminatory

intent often will be the demeanor of the attorney who exercises the challenge"). We may not substitute our opinion for the trial court's factual assessment of the neutrality of the prosecutor's explanation for exercising strikes. *Gibson v. State*, 144 S.W.3d 530, 534 n.5 (Tex. Crim. App. 2004); *see Snyder*, 552 U.S. at 477-79, 128 S. Ct. at 1208 (holding "in the absence of exceptional circumstances," deference should be given to trial court). The Supreme Court has recently reaffirmed its prior holdings that the best evidence of the intent of the attorney exercising a strike is often that attorney's demeanor. *Thaler v. Haynes*, No. 09-273, 559 U.S. ___, 130 S. Ct. 1171, 1175, 175 L. Ed. 2d 1003, 1008, 2010 U.S. LEXIS 1037 at *10 (2010) (per curiam) (*quoting Snyder v. Louisiana*, 552 U.S. 472, 477, 128 S. Ct. 1203, 170 L. Ed. 2d 175 (2008), *Hernandez v. New York*, 500 U.S. 352, 365, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991) (plurality opinion)).

In reviewing the record for clear error, "the reviewing court should consider the entire record of voir dire; it need not limit itself to arguments or considerations that the parties specifically called to the trial court's attention so long as those arguments or considerations are manifestly grounded in the appellate record." *Watkins*, 245 S.W.3d at 448 (*citing Young v. State*, 826 S.W.2d 141 (Tex. Crim. App. 1991); *Vargas v. State*, 838 S.W.2d 552, 556 (Tex. Crim. App. 1992); *Miller-El v. Dretke*, 545 U.S. 231, 241 n.2, 125 S. Ct. 2317, 2326, 162 L. Ed. 2d 196 (2005) (in context of federal habeas corpus review under 28 U.S.C. section 2254, federal court could consider entirety of appellate record with respect to voir dire and make comparative-juror analysis in determining plausibility of prosecutor's race-neutral explanations, though state court was apparently never specifically asked to make comparative-juror analysis during Batson hearing)).

The Supreme Court has repeatedly instructed that we are to consider "all relevant circumstances." *Miller-El*, 545 U.S. at 240, 125 S. Ct. at 2325 (citing *Batson*, 476 U.S. at 96-97, 106 S. Ct. 1712). "Those circumstances were the facts discerned by the trial judge during his supervision of the voir dire." *Young*, 826 S.W.2d at 145.

*Factors to Consider*

The United States Supreme Court has recognized several non-exclusive factors to consider in determining whether a party has met its burden to show purposeful discrimination. *Watkins*, 245 S.W.3d at 448-49 (*citing Miller-El*, 545 U.S. at 240, 125 S. Ct. 2317 (2005)). Specifically, we consider the collective and cumulative impact of the following non-exclusive factors:

\* whether the proponent of the peremptory challenge exercised its challenges to eliminate a far greater proportion of jurors of the same race of the juror in question;

\* whether the reasons offered for striking the juror in question "appeared to apply equally well" to other jurors of a different race who were not struck;

\* whether the proponent of the peremptory challenge utilized its option to shuffle the jury panels in a manner that supported an inference of race discrimination;

\* whether the proponent of the peremptory challenge directed questions expressly designed to elicit grounds for peremptory challenges disproportionately, in a manner that suggested an intent to single out jurors of an identified race for elimination; and

\* whether the proponent of the peremptory challenge had followed a formal policy to exclude jurors of an identified race.

*Id*.

*The Facts*

After the State and Ross had exercised their peremptory challenges, Ross objected to the State's challenge to venireperson Heslip and asked the State to give a race-neutral reason for the strike. The following exchange took place:

COURT:     Any objections to the jury chosen?

ROSS:     Yes, Your Honor. I have a Batson challenge. There are – there were three African-Americans within the strike zone: One being Lonnie Heslip, second being Sylvester Calhoun, and the third being Carrie Anna Trussell. The State struck Lonnie Heslip. I would ask for them to give a race-neutral reason for why they struck Mr. Heslip.

COURT:     That's Juror No. 19.

STATE:     First of all, I don't think he met the initial burden of showing we deliberately used a preemptory (sic) challenge based on race. However, when I asked Mr. Heslip a question – the very first question I asked him was about evidence – what type of evidence he would expect to see, he sat silent for quite a while. I don't know if I woke him up or not; but he was not paying attention throughout the questioning, the voir dire. Whenever I would talk to him, it would take several moments for him to think about responding. It just didn't appear to me and Mr. Baker that he was paying attention to anything going on. He could not think of any type of evidence, also, that one might expect to see in a criminal case; and that going along with the failure to pay any attention we thought was not going to be good in this case.

And just for the record, we did leave other minorities on. We had Mr. Calhoun, Ms. Trussell within the strike zone, also Ruth Torres and – I thought there was another, but I'm not sure.

COURT:     Any cross?

ROSS:     Were those the only reasons that you used to strike that juror, Mr. Heslip?

STATE:     Failure to pay attention – what we perceived as failure to pay attention, the fact he appeared asleep a couple of times, and his lack of any response to any question that I asked him.

ROSS: And did – when you asked him about the evidentiary – what evidence you expect to hear, you actually told him an answer: Witness, correct?

STATE: Right. After several moments of waiting for him to respond, I suggested, "Maybe you would expect to hear from a witness." I think he agreed with that. Then I went on to the next person.

ROSS: He agreed with the presumption of innocence? He agreed with that, correct? You remember that?

STATE: I believe he did, yes.

ROSS: And you also asked that panel member whether he would deter, punish, or rehabilitate; and he said punish; is that correct?

STATE: I believe that's right.

ROSS: Those are the only questions you asked him, right?

STATE: That's right.

ROSS: Nothing further?

STATE (Second prosecutor speaking): Can I be on the record so we have a clean record? Is that okay?

COURT: Yes, sir.

STATE: I think that the significance that we felt about Mr. Heslip is we've got a case that's clearly going to be decided on grounds of circumstantial evidence. His inability to come up with any idea of what evidence he would expect to see or hope to see in the case led us to a problem.

No. 2, each time Mr. Brick asked a question of Mr. Heslip – it is my belief that he was actually sleeping at least one period of time there. But further than that, he was never even actively engaged in looking at the prosecution or the defense for that matter.

And so the answers – even on several occasions we had to coax him into saying, "You're going to have to say that out loud." There was a lack of any kind of engagement into this case.

There would have been further strikes on the same grounds. Mr. Molina was actually sleeping. He's No. 42. He was outside of the strike zone; but just for the record, he was further sleeping and, again, on the same grounds would have been struck by the State if we had gotten to that number just as another juror that would have fallen under the same rationale for the strike.

COURT:     Do you have any cross?

ROSS:      Nothing further on that, Judge.

COURT:     All right. Any argument on your motion?

ROSS:      That the Court make a finding that that was a race-neutral reason.

COURT:     I want to hear what your argument is.

ROSS:      Judge, my argument basically is on the race-neutral part of it is those aren't valid reasons. I didn't honestly see him sleeping, but they did ask him a couple of questions. He did respond. If anything it was positive towards the State to punish. He agreed with the presumption of innocence. There was nothing that he said during the State's voir dire that would have made you believe that he would have been a bad witness for the State.

The fact that a juror's inattentive – there was (sic) a lot of jurors that were inattentive out there being that Mr. Brick was going on for an hour and a half and I was going on for almost an hour. I don't think that's a proper race-neutral reason to strike a juror.

COURT:     Sleeping sounds pretty race-neutral to me. Based on everything I've heard here, I don't find any grounds to sustain your objections so it's overruled.

ROSS:      Just for the record, Judge, if you were to grant my motion, then that would have left Lonnie Heslip on the jury; and Jacqueline Blair would not have been on the jury.

COURT:     All right.

*Analysis*

We do not reach the issue of a prima facie showing, and the State offered racially-neutral reasons for its challenge of Heslip. Ross contends that he successfully rebutted the pretextual reasons offered by the State. However, when viewed using the factors set forth in *Watkins*, we do not find that the trial court's ruling was clearly erroneous. There was not a challenge to the other two African-Americans by the State, and they were part of the jury panel ultimately selected. The reasons offered by the State did not appear to apply in the same manner as jurors who were not struck and beyond the blanket statement that other jurors were inattentive because voir dire was lengthy, Ross does not specify which other jurors were inattentive or what their race was. The State specified one other juror of a different ethnicity that would have also been struck for sleeping had he not been outside of the strike zone. There is nothing in the record to indicate whether a jury shuffle was requested by either the State or Ross. Further, Ross does not demonstrate nor do we find that there is anything in the record to indicate that questions were asked of Heslip in a manner that suggested an intent to single out jurors of his race for elimination. Ross does not argue that the State had a formal policy of excluding jurors of African-American descent.

It is apparent from our review of the jury selection process that the State repeated the questions asked to Heslip; however, Heslip did answer them when asked. There is nothing in the record to demonstrate the length of time it took Heslip to respond to the State's questions. Although he did not answer the question relating to what type of

evidence he would expect to see, he was the first panel member to be asked that question. The questions asked to him were asked of the other panel members, apparently by going down the rows. The trial court found that sleeping is a race-neutral reason to strike a potential juror.

Ross contends that when the State's reasons for the strike are demeanor-related only, the Court should closely scrutinize those reasons. *See Branch v. State*, 774 S.W.2d 781, 782 (Tex. App.—El Paso 1989, pet. ref'd) (While not every strike based on explanations not susceptible to objective evaluation and which may rarely be confirmed or refuted in an appellate record can be summarily disbelieved; they do merit closer scrutiny.). Certainly close attention must be given to demeanor-based strikes; however, it is the trial court that is in the best position to observe the demeanor of the potential juror and of the State. The trial court resolved the factual disputes and evidently believed that the State exercised the peremptory challenges for the reasons stated.

Based on a review of the record, and giving the required deference to the trial court's ruling, we conclude that the State provided facially race-neutral explanations for its use of the peremptory challenge on Heslip, and that Ross did not carry his burden to show that the stated reasons were pretextual. We overrule issue one.

### Code of Criminal Procedure Article 35.261

Ross complains in his second issue that the trial court erred by denying his *Batson* claim pursuant to article 35.261 of the Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 35.261 (Vernon 2006). However, his objection in the trial court was solely based on Batson and at no time did Ross object on the basis of the Code of

Criminal Procedure. This issue was not preserved and therefore is waived. *See* TEX. R. APP. P. 33.1. We overrule issue two.

*Conclusion*

We find that the trial court's ruling denying Ross's *Batson* challenge was not clearly erroneous. Further, we find that Ross's complaint regarding a violation of article 35.261 of the Code of Criminal Procedure was not preserved. We affirm the judgment of the trial court.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
Affirmed
Opinion delivered and filed November 10, 2010
Do not publish
[CRPM]