IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-09-00249-CR

 

Demestra Undra Ross,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 



From the 85th District Court

Brazos County, Texas

Trial Court No. 08-01827-CRF-85

 



MEMORANDUM  Opinion










 

            Demestra Undra Ross appeals from his
conviction by a jury for two counts of aggravated robbery, for which he was
sentenced to prison for sixty (60) years.  Tex.
Pen. Code Ann. § 29.03 (Vernon 2003).  Ross complains that the trial
court erred by denying his motion pursuant to Batson v. Kentucky and
article 35.261 of the Code of Criminal Procedure regarding one African-American
juror that was struck by the State at the conclusion of voir dire.  Because we
find no error, we affirm the judgment of the trial court.

 

Batson Challenge

In his first issue, Ross contends that the trial
court erred in overruling his Batson challenge to one venireperson,
Heslip.  See Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed.
2d 69 (1986).  Batson provides a three-step process for a trial court
to use in adjudicating a claim that a peremptory challenge was based on race.  Snyder
v. Louisiana, 552 U.S. 472, 128 S. Ct. 1203, 1207, 170 L. Ed. 2d 175
(2008).  “’First, a defendant must make a prima facie showing that a peremptory
challenge has been exercised on the basis of race[; s]econd, if that showing
has been made, the prosecution must offer a race-neutral basis for striking the
juror in question[; and t]hird, in light of the parties’ submissions, the trial
court must determine whether the defendant has shown purposeful
discrimination.’”  Id. (quoting Miller-El v. Dretke, 545 U.S. 231, 277, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2006) (Thomas, J., dissenting)).  The
exclusion of even one member of Ross’s race from the jury panel for racial
reasons invalidates the entire jury selection process.  See Snyder, 128
S. Ct. at 1208.

If the opponent of a
challenged strike raises a question of purposeful discrimination and the trial
court proceeds immediately to the State’s race-neutral reasons for the
strike, a reviewing court assumes that the opponent has satisfied the first
step of the Batson process.  Watkins v. State, 245 S.W.3d 444, 447 (Tex.
Crim. App. 2008) (citing Hernandez v. New York, 500 U.S. 352, 359, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991)).  The second step of the process does not
demand an explanation that is persuasive, or even plausible.  Purkett v.
Elem, 514 U.S. 765, 768, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995).  The
issue is the facial validity of the prosecutor’s explanation.  Id.  Unless a discriminatory intent is inherent in the prosecutor’s explanation, the
reason offered will be deemed race neutral.  Id. (quoting Hernandez,
500 U.S. at 360.

It is not until the third
step that the persuasiveness or the justification of the strike becomes
relevant.  Id.  “At that stage, implausible or fantastic justifications
may (and probably will) be found to be pretexts for purposeful
discrimination.”  Id.  The prosecutor’s proffered reasons for striking
an individual must be evaluated in light of the circumstances of the case.  See
Snyder v. Louisiana, 552 U.S. 472, 128 S. Ct. 1203, 1210, 170 L. Ed. 2d 175
(2008).  On appeal, a trial court’s ruling on the issue of discriminatory
intent must be sustained unless it is clearly erroneous.  Snyder, 128 S.
Ct. at 1207; Watkins v. State, 245 S.W.3d 444, 448 (Tex. Crim. App.
2008).

Clearly Erroneous Standard

To hold that a fact-finder’s decision was “clearly
erroneous,” the record must leave us with a “definite and firm conviction that
a mistake has been committed.”  Hill v. State, 827 S.W.2d 860, 865 (Tex.
Crim. App. 1992); see also Hernandez v. New York, 500 U.S. 352,
369, 111 S. Ct. 1859, 1871, 114 L. Ed. 2d 395 (1991) (holding that a trial
court’s finding will not be disturbed unless the appellate court is “’left with
a definite and firm conviction that a mistake has been committed’”) (internal
citation omitted).

“We review the record of a Batson
hearing and the voir dire examination in the light most favorable to the trial
court’s ruling.”  Young v. State, 283 S.W.3d 854, 866 (Tex. Crim. App.
2009) (en banc).  We must give great deference to credibility and demeanor
determinations made by the trial court in connection with a Batson
inquiry.  Snyder, 552 U.S. at 477-79, 128 S. Ct. at 1208 (observing that
“the best evidence of discriminatory intent often will be the demeanor of the
attorney who exercises the challenge”).  We may not substitute our opinion for
the trial court’s factual assessment of the neutrality of the prosecutor’s
explanation for exercising strikes.  Gibson v. State, 144 S.W.3d 530,
534 n.5 (Tex. Crim. App. 2004); see Snyder, 552 U.S. at 477-79, 128 S. Ct.
at 1208 (holding “in the absence of exceptional circumstances,” deference
should be given to trial court).  The Supreme Court has recently reaffirmed its
prior holdings that the best evidence of the intent of the attorney exercising
a strike is often that attorney’s demeanor.  Thaler v. Haynes, No.
09-273, 559 U.S. ___, 130 S. Ct. 1171, 1175, 175 L. Ed. 2d 1003, 1008, 2010
U.S. LEXIS 1037 at *10 (2010) (per curiam) (quoting Snyder v. Louisiana,
552 U.S. 472, 477, 128 S. Ct. 1203, 170 L. Ed. 2d 175 (2008), Hernandez v. New York, 500 U.S. 352, 365, 111 S. Ct. 1859, 114 L. Ed.
2d 395 (1991) (plurality opinion)).

In reviewing the record for clear error, “the
reviewing court should consider the entire record of voir dire; it need not
limit itself to arguments or considerations that the parties specifically
called to the trial court’s attention so long as those arguments or
considerations are manifestly grounded in the appellate record.”  Watkins,
245 S.W.3d at 448 (citing Young v. State, 826 S.W.2d 141 (Tex. Crim.
App. 1991); Vargas v. State, 838 S.W.2d 552, 556 (Tex. Crim. App. 1992);
Miller-El v. Dretke, 545 U.S. 231, 241 n.2, 125 S. Ct. 2317, 2326, 162
L. Ed. 2d 196 (2005) (in context of federal habeas corpus review under 28
U.S.C. section 2254, federal court could consider entirety of appellate record
with respect to voir dire and make comparative-juror analysis in determining
plausibility of prosecutor’s race-neutral explanations, though state court was
apparently never specifically asked to make comparative-juror analysis during
Batson hearing)).  The Supreme Court has repeatedly instructed that we are to
consider “all relevant circumstances.”  Miller-El, 545 U.S. at 240, 125 S. Ct. at 2325 (citing Batson, 476 U.S. at 96-97, 106 S. Ct. 1712).
 “Those circumstances were the facts discerned by the trial judge during
his supervision of the voir dire.”  Young, 826 S.W.2d at 145.

Factors to Consider

The United States Supreme
Court has recognized several non-exclusive factors to consider in determining
whether a party has met its burden to show purposeful discrimination.  Watkins,
245 S.W.3d at 448-49 (citing Miller-El, 545 U.S. at 240, 125 S. Ct. 2317 (2005)).  Specifically, we consider the collective and cumulative impact of the
following non-exclusive factors:

*           whether the proponent of the
peremptory challenge exercised its challenges to eliminate a far greater
proportion of jurors of the same race of the juror in question;

 

*           whether the reasons offered for
striking the juror in question “appeared to apply equally well” to other jurors
of a different race who were not struck;

 

*           whether the proponent of the
peremptory challenge utilized its option to shuffle the jury panels in a manner
that supported an inference of race discrimination;

 

*           whether the proponent of the
peremptory challenge directed questions expressly designed to elicit grounds
for peremptory challenges disproportionately, in a manner that suggested an
intent to single out jurors of an identified race for elimination; and

 

*           whether the proponent of the
peremptory challenge had followed a formal policy to exclude jurors of an
identified race.

 

Id.




The Facts

After the State and Ross had exercised their
peremptory challenges, Ross objected to the State’s challenge to venireperson
Heslip and asked the State to give a race-neutral reason for the strike.  The
following exchange took place:

COURT:         Any objections to the jury chosen?

 

ROSS:             Yes, Your Honor.  I have a
Batson challenge.  There are – there were three African-Americans within the
strike zone:  One being Lonnie Heslip, second being Sylvester Calhoun, and the
third being Carrie Anna Trussell.  The State struck Lonnie Heslip.  I would ask
for them to give a race-neutral reason for why they struck Mr. Heslip.

 

COURT:         That’s Juror No. 19.

 

STATE:           First of all, I don’t think he
met the initial burden of showing we deliberately used a preemptory (sic)
challenge based on race.  However, when I asked Mr. Heslip a question – the
very first question I asked him was about evidence – what type of evidence he
would expect to see, he sat silent for quite a while.  I don’t know if I woke
him up or not; but he was not paying attention throughout the questioning, the
voir dire.  Whenever I would talk to him, it would take several moments for him
to think about responding.  It just didn’t appear to me and Mr. Baker that he
was paying attention to anything going on.  He could not think of any type of evidence,
also, that one might expect to see in a criminal case; and that going along
with the failure to pay any attention we thought was not going to be good in
this case.

 

                        And just for the record,
we did leave other minorities on.  We had Mr. Calhoun, Ms. Trussell within the
strike zone, also Ruth Torres and – I thought there was another, but I’m not
sure.

 

COURT:         Any cross?

 

ROSS:             Were those the only reasons that
you used to strike that juror, Mr. Heslip?

 

STATE:           Failure to pay attention – what
we perceived as failure to pay attention, the fact he appeared asleep a couple
of times, and his lack of any response to any question that I asked him.

 

ROSS:             And did – when you asked him
about the evidentiary – what evidence you expect to hear, you actually told him
an answer:  Witness, correct?

 

STATE:           Right.  After several moments of
waiting for him to respond, I suggested, “Maybe you would expect to hear from a
witness.”  I think he agreed with that.  Then I went on to the next person.

 

ROSS:             He agreed with the presumption
of innocence?  He agreed with that, correct?  You remember that?

 

STATE:           I believe he did, yes.

 

ROSS:             And you also asked that panel
member whether he would deter, punish, or rehabilitate; and he said punish; is
that correct?

 

STATE:           I believe that’s right.

 

ROSS:             Those are the only questions you
asked him, right?

 

STATE:           That’s right.

 

ROSS:             Nothing further?

 

STATE (Second prosecutor speaking):     Can I be
on the record so we have a clean record?  Is that okay?

 

COURT:         Yes, sir.

 

STATE:           I think that the significance
that we felt about Mr. Heslip is we’ve got a case that’s clearly going to be
decided on grounds of circumstantial evidence.  His inability to come up with
any idea of what evidence he would expect to see or hope to see in the case led
us to a problem.

 

                        No. 2, each time Mr. Brick
asked a question of Mr. Heslip – it is my belief that he was actually sleeping
at least one period of time there.  But further than that, he was never even
actively engaged in looking at the prosecution or the defense for that matter.

 

                        And so the answers – even
on several occasions we had to coax him into saying, “You’re going to have to
say that out loud.”  There was a lack of any kind of engagement into this case.

 

                        There would have been
further strikes on the same grounds.  Mr. Molina was actually sleeping.  He’s
No. 42.  He was outside of the strike zone; but just for the record, he was
further sleeping and, again, on the same grounds would have been struck by the
State if we had gotten to that number just as another juror that would have
fallen under the same rationale for the strike.

 

COURT:         Do you have any cross?

 

ROSS:             Nothing further on that, Judge.

 

COURT:         All right.  Any argument on your
motion?

 

ROSS:             That the Court make a finding
that that was a race-neutral reason.

 

COURT:         I want to hear what your argument
is.

 

ROSS:             Judge, my argument basically is
on the race-neutral part of it is those aren’t valid reasons.  I didn’t
honestly see him sleeping, but they did ask him a couple of questions.  He did
respond.  If anything it was positive towards the State to punish.  He agreed
with the presumption of innocence.  There was nothing that he said during the
State’s voir dire that would have made you believe that he would have been a
bad witness for the State.

 

                        The fact that a juror’s
inattentive – there was (sic) a lot of jurors that were inattentive out there
being that Mr. Brick was going on for an hour and a half and I was going on for
almost an hour.  I don’t think that’s a proper race-neutral reason to strike a
juror. 

 

COURT:         Sleeping sounds pretty race-neutral
to me.  Based on everything I’ve heard here, I don’t find any grounds to
sustain your objections so it’s overruled.

 

ROSS:             Just for the record, Judge, if
you were to grant my motion, then that would have left Lonnie Heslip on the
jury; and Jacqueline Blair would not have been on the jury.

 

COURT:         All right.

 

Analysis

            We do not reach the issue of a prima
facie showing, and the State offered racially-neutral reasons for its challenge
of Heslip.  Ross contends that he successfully rebutted the pretextual reasons
offered by the State.  However, when viewed using the factors set forth in Watkins,
we do not find that the trial court’s ruling was clearly erroneous.  There was
not a challenge to the other two African-Americans by the State, and they were
part of the jury panel ultimately selected.  The reasons offered by the State
did not appear to apply in the same manner as jurors who were not struck and
beyond the blanket statement that other jurors were inattentive because voir
dire was lengthy, Ross does not specify which other jurors were inattentive or
what their race was.  The State specified one other juror of a different
ethnicity that would have also been struck for sleeping had he not been outside
of the strike zone.  There is nothing in the record to indicate whether a jury
shuffle was requested by either the State or Ross.  Further, Ross does not
demonstrate nor do we find that there is anything in the record to indicate
that questions were asked of Heslip in a manner that suggested an intent to
single out jurors of his race for elimination.  Ross does not argue that the
State had a formal policy of excluding jurors of African-American descent.  

It is apparent from our review of the jury
selection process that the State repeated the questions asked to Heslip;
however, Heslip did answer them when asked.  There is nothing in the record to
demonstrate the length of time it took Heslip to respond to the State’s
questions.  Although he did not answer the question relating to what type of
evidence he would expect to see, he was the first panel member to be asked that
question.  The questions asked to him were asked of the other panel members,
apparently by going down the rows.  The trial court found that sleeping is a
race-neutral reason to strike a potential juror.  

Ross contends that when the State’s reasons for
the strike are demeanor-related only, the Court should closely scrutinize those
reasons.  See Branch v. State, 774 S.W.2d 781, 782 (Tex. App.—El Paso 1989, pet. ref’d) (While not every strike based on explanations not susceptible to
objective evaluation and which may rarely be confirmed or refuted in an
appellate record can be summarily disbelieved; they do merit closer scrutiny.). 
Certainly close attention must be given to demeanor-based strikes; however, it
is the trial court that is in the best position to observe the demeanor of the
potential juror and of the State.  The trial court resolved the factual
disputes and evidently believed that the State exercised the peremptory
challenges for the reasons stated.  

Based on a review of the record, and giving the
required deference to the trial court’s ruling, we conclude that the State
provided facially race-neutral explanations for its use of the peremptory
challenge on Heslip, and that Ross did not carry his burden to show that the
stated reasons were pretextual.  We overrule issue one. 

Code of Criminal Procedure Article 35.261

            Ross complains in his second issue that the trial court erred by
denying his Batson claim pursuant to article 35.261 of the Code of
Criminal Procedure.  Tex. Code Crim.
Proc. Ann. art. 35.261 (Vernon 2006).  However, his objection in the
trial court was solely based on Batson and at no time did Ross object on the
basis of the Code of Criminal Procedure.  This issue was not preserved and
therefore is waived.  See Tex. R.
App. P. 33.1.  We overrule issue two.  

Conclusion

            We find that the trial court’s ruling
denying Ross’s Batson challenge was not clearly erroneous.  Further, we
find that Ross’s complaint regarding a violation of article 35.261 of the Code
of Criminal Procedure was not preserved.  We affirm the judgment of the trial
court.

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Before Chief Justice
Gray,

            Justice
Reyna, and

            Justice Davis

Affirmed

Opinion delivered and
filed November 10, 2010

Do not publish

[CRPM]