**Lee Arthur YOUNG, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 384–90.

Court of Criminal Appeals of Texas, En Banc.

June 12, 1991.

Opinion on Denial of Rehearing April 1, 1992.

Dissenting Opinion to Denial of Rehearing of Judge Benavides April 1, 1992.

---

Jan E. Hemphill, Dallas, for appellant.

John Vance, Dist. Atty., and Sharon Batjer, John Butrus and Manny Alvarez, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Jeffrey L. Van Horn, Asst. State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

A jury convicted appellant of forgery. V.T.C.A. Penal Code § 32.21. Finding the two enhancement paragraphs to be true, the trial judge sentenced appellant to 40 years imprisonment in the Texas Department of Corrections.[1] Appellant raised two points of error in the court of appeals, which were overruled in an unpublished opinion. *Young v. State*, No. 05–89–00571–CR, delivered March 5, 1990. This Court granted appellant's second ground for review in his petition which challenged the court of appeals' ruling on his *Batson*[2] claim. We will reverse and remand.

The facts of this offense are not relevant to the disposition of appellant's ground for review, nor are the circumstances of the voir dire even though appellant has raised a *Batson* claim. However, a *Batson* hearing was held in this cause after voir dire, the facts of which are pertinent.

After the jury was selected, but before it was sworn, appellant, a black man, lodged his *Batson* objection; that is, he asked the trial court to require the State to explain the strikes of several black persons from the jury panel. *Henry v. State*, 729 S.W.2d 732, 737 (Tex.Cr.App.1987). The State explained its use of peremptory strikes on the seven prospective jurors listed by appellant, and appellant did not seek to cross-examine the prosecutor thereafter. In rebuttal, appellant quarreled with the State's reason for striking one of the black prospective jurors and argued generally that he was denied a trial by a jury of his peers. The trial court overruled appellant's *Batson* motion.[3]

In the court of appeals, appellant contended the trial court erred in overruling

---

1. Now called the Texas Department of Criminal Justice, Institutional Division.

2. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

3. In its opinion, the court of appeals assumed, without deciding, that appellant had established a prima facie case of discrimination because the prosecutor advanced his neutral explanations for his peremptory challenges immediately upon appellant's listing of the struck jurors, without any prompting from the trial judge. The court of appeals also construed the trial court's denial of appellant's *Batson* motion as a finding that the State articulated race neutral reasons for its use of its peremptory strikes. Slip op. at p. 5.

his objections to the State's use of peremptory strikes. In advancing this argument before the appellate court, appellant pointed to testimony from the voir dire examination of the panel which weighed against the racial neutrality of the reasons offered by the State. Appellant argued the State's reasons were merely pretexts because of the lack of questioning of the struck venirepersons and the disparate treatment of the black and white venirepersons. See *Keeton v. State*, 749 S.W.2d 861, 868 (Tex. Cr.App.1988) (Opinion following Abatement). The court of appeals, however, refused to consider appellant's comparisons of the venirepersons in his effort to show disparate treatment since appellant had not urged these same comparisons before the trial court during the *Batson* hearing. *Young*, slip op. at p. 7, citing *Tompkins v. State*, 774 S.W.2d 195, 202, n. 6A (Tex.Cr.App.1987), judgment affirmed by equally divided court, 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989) (O'Connor, J., not participating). The court of appeals thus reviewed the State's explanations, found that they were race neutral, and held that the record supported the trial judge's denial of appellant's *Batson* motion. *Young*, slip op. at p. 8.

In his petition for discretionary review, appellant contends the court of appeals erred in holding "alleged discrepancies in use of strikes by the State were not available on Appellant's behalf on appeal because not urged in the trial court." Appellant argues that footnote 6A in *Tompkins*, 774 S.W.2d at 202, did not *hold* that comparisons had to be raised in the trial court to be available for consideration on appeal. Moreover, appellant claims the position of the State and the court of appeals requires him to remind the trial judge of his role and responsibilities during a *Batson* hearing. That is, the trial court must examine the State's reasons for its strikes in light of the circumstances of that particular case—the racial composition of the panel, the State's voir dire, the voir dire testimony of each panel member whether or not peremptorily challenged, and the testimony from the *Batson* hearing—when making determinations of weight and credibility and in

eventually ruling on the *Batson* claim. *Whitsey v. State*, 796 S.W.2d 707, 716 (Tex. Cr.App.1989).

The State counters with several arguments. First, the State asserts that if the appellate court considers appellant's comparisons, it (the appellate court) will be considering matters not raised in the trial court and thus will not be reviewing the trial court's decision, but rather will be making the *Batson* decision de novo, which is not a function of the appellate court, and consequently will not be giving the trial court decision due deference. The second reason addresses the appellant's burden in *Batson* cases. Once the defendant has made a prima facie case and the State articulates race neutral reasons for its strikes, the burden shifts to the defendant to rebut those explanations. *Williams v. State*, 804 S.W.2d 95 (Tex.Cr.App.1991) (Opinion on Remand). If the defendant perceives discrepancies between the prosecutor's explanations and the voir dire, according to the State, the defendant should raise those discrepancies in the trial court as part of his rebuttal. The State asserts this burden is not onerous. Finally, the State argues that if the appellant may raise matters on appeal which were not raised in the trial court, then the State should be allowed to do the same, to-wit: bring forward facts in the record which support its explanation or rebut the appellant's rebuttal.

The court of appeals based its decision on footnote 6A in *Tompkins*, 774 S.W.2d 195, which stated:

In a supplemental brief, filed on September 28, 1987, appellant has offered [to compare the black venirepersons struck with those venirepersons not struck], inviting this Court to employ the record of jury selection that exists in this cause to impeach or rebut testimony given by the prosecutors at the *"Batson"* hearing, supra. The point is well-taken and does cast considerable doubt upon the neutral explanations offered by counsel for the State. Had the matter been pressed by defense counsel during his cross-examination of the prosecutors, or

otherwise brought before the trial judge at the *"Batson"* hearing, it might have materially affected the trial judge's ultimate findings of fact.

However, even though the trial judge might have judicially noticed or independently recalled testimony from the jury selection process, there is nothing in the *"Batson"* hearing to suggest that she was requested by defense counsel to do so. In short, at the *"Batson"* hearing counsel for appellant gave no indication to the trial judge that he wanted her to consider the credibility of any neutral explanation offered by the State based upon the manner in which similarly-situated white veniremen were treated during voir dire.

We point out that, at the hearing conducted pursuant to *Batson,* the trial judge is the fact-finder, and it is his responsibility to weigh the evidence and determine the credibility of the witnesses. A reviewing court should reverse his findings only when they are not supported by sufficient evidence or, as we often say, for an "abuse of discretion." Because the trial judge was not urged to make, and did not make, a finding based upon a comparison analysis in deciding the issue whether the prosecutor's neutral explanations were rebutted or impeached at the *"Batson"* hearing with evidence that unchallenged white veniremen also possessed the same purportedly undesireable (sic) characteristics, we do not consider this circumstance in reviewing the trial judge's findings in this cause.

*Id.* at 202–203.

Judge Teague, the author of the *Tompkins* opinion, makes a valid point that urging the comparisons at the *Batson* hearing

could materially affect the trial judge's findings of fact and conclusions of law on the *Batson* claim. Such comparisons draw into question the genuine neutrality of the prosecutor's explanations for his peremptory challenges and suggest that the race neutral explanations may be pretexts. Indeed, we would urge defense counsel to make comparisons as part of his rebuttal evidence either during his cross-examination of the State's attorney or during the *Batson* hearing, as suggested in *Tompkins,* because the trial judge's findings are accorded great deference upon appellate review. See *Keeton,* 749 S.W.2d at 870; *Whitsey,* 796 S.W.2d at 721, n. 4.[4] Moreover, *Tompkins* was a capital murder case, to which the pronouncement in footnote 6A may be more appropriately applicable. Voir dire for a capital murder trial generally runs for weeks, with hundreds of questions and thousands of pages of transcription, making it extremely difficult for the trial judge, as well as the parties, to remember discrepancies in the voir dire of the various veniremembers who are questioned individually. In contrast, voir dire in a trial for a non-capital offense is done before the full jury panel rather than individually, usually lasts less than a day, and all peremptory challenges are made at its conclusion. Discrepancies in the voir dire of the various veniremembers can be readily determined by the trial judge during the procedure, and comparisons of the challenged prospective jurors with those not struck can be made contemporaneously with the use of the peremptory strikes.

■ For several reasons we believe appellant is correct that this footnote in *Tompkins* is not a holding of this Court, and we decline to adopt it as one.[5] First,

---

**4.** Also see Judge Teague's concurring opinion in *Keeton,* 749 S.W.2d at 879–880. There, Judge Teague was compelled to agree with the majority that the prosecutor's race neutral explanations for his peremptory challenges were "supported by the record", our appellate standard of review at that time, because there was no cross-examination or impeaching evidence from the *Batson* hearing which rebutted, disputed, controverted, or impugned the prosecutor's testimony. Judge Teague recognized the importance of

a comparative analysis to the trial judge's findings and the appellate court's review thereof. See also *Whitsey,* 796 S.W.2d 707, 726 *et seq.* (discussing extrinsic evidence presented by defense counsel in rebuttal of prosecutor's race neutral explanations for peremptory strikes).

**5.** As is generally true with footnotes, we regard this footnote as dictum even though we are not in complete disagreement with some of its observations.

we observe the Supreme Court's decision in *Batson* does not support the idea that discrepancies in the voir dire of the various panel members must be brought to the trial judge's attention by the accused in order to preserve for appellate review the issue of the constitutionality of the prosecutor's peremptory challenges. In *Batson,* defense counsel timely objected to the prosecutor's removal of all blacks from the jury panel, *viz:* he moved to discharge the jury before it was sworn on the grounds that the prosecutor's actions violated Batson's Sixth and Fourteenth Amendment rights to a jury drawn from a cross-section of the community and to equal protection of the laws. The Supreme Court articulated the requisite showing to establish such violations. After his objection, the defendant must establish a prima facie case of purposeful discrimination, which he does by:

> 1. showing he is a member of a cognizable racial group, and the prosecutor has exercised peremptory challenges to remove from the venire members of his race;
> 2. relying on the fact that peremptory challenges constitute a jury selection practice that permits discrimination; and
> 3. showing these facts and other relevant circumstances which raise an inference that the prosecutor peremptorily struck veniremembers on account of their race.

*Batson,* 106 S.Ct. 1712, 1722–23.

The Supreme Court then discussed the trial court's role in deciding whether the defendant has made a prima facie case. The Court directed the trial judge to "consider all relevant circumstances" of the voir dire examination. *Id.* at 1723. Those "circumstances" were the facts discerned by the trial judge during his supervision of the voir dire. The Supreme Court gave illustrative examples: a pattern of strikes against black veniremembers and the prosecutor's questions and statements during voir dire and in exercising his challenges. After the defendant makes his prima facie

showing, the burden shifts to the State to come forward with neutral explanations for challenging black prospective jurors. It is then the trial court's duty to determine if the defendant has established purposeful discrimination. *Id.* at 1724.[6]

The Supreme Court makes no mention of a "comparative analysis" in its discussion of a defendant's burden in *Batson,* but the Court notes the trial judge's decision on whether the defendant has proved his *Batson* claim turns, in part, on his observations during the voir dire examination. As supervisor of the voir dire, the trial judge is in a position to readily perceive discrepancies during the jury selection process, such as, the prosecutor failing to question any of the minority veniremen, yet striking them anyway; the prosecutor striking minority veniremen who gave answers similar to those of majority veniremen who were not struck; or the prosecutor striking minority veniremen who had the same characteristics professionally, socially, religiously, etc. as majority veniremen who were not struck. These factors which may indicate disparate treatment of prospective jurors enter into the trial judge's assessment of the prosecutor's credibility and eventually the trial judge's determination of the racial neutrality of his peremptory challenges.

Furthermore, we find that discrepancies in the voir dire do not constitute a specific *Batson* objection in and of themselves, nor are they necessarily an element of the *Batson* objection.[7] The "comparative analysis" is also not the cross-examination of the prosecutor at the *Batson* hearing, although it may indeed be a part of that examination. Rather, we believe a comparative analysis is an argument of the evidence presented to the trial judge during the voir dire and the *Batson* hearing. It is defense counsel's opportunity to rehash the voir dire, argue any perceived discrepancies in the voir dire and impeaching evidence brought out during cross-examination of the prosecutor, and show that the prosecu-

6. The Supreme Court declined to formulate particular procedures for trial courts to follow upon a defendant's timely objection to the prosecutor's use of his peremptory challenges.

7. We express no opinion on what is necessary for a legally sufficient *Batson* objection.

tor's race neutral explanations for his peremptory strikes are not in fact race neutral. While this analysis is certainly critical to a defendant's rebutting the prosecutor's facially neutral explanations and sustaining his burden under *Batson,* it is not required. Moreover, this type analysis is significant, maybe even more so, on appeal when the appellate court is reviewing the trial judge's findings as to purposeful discrimination. When making its review, the appellate court is obviously not in the voir dire "catbird seat", and a detailed comparison of the prosecutor's strikes, the explanations therefor, and other relevant circumstances of the voir dire gives the appellate court a more accurate picture of the voir dire than a cold record.

█ The State asserts that if the appellant may make comparisons for the first time on direct appeal, then it should be allowed to do the same, *viz:* bring forward facts in the record which support its explanation or rebut the appellant's rebuttal. The State's argument is flawed for two reasons. First, by our ruling today, we are not allowing appellant to raise matters on appeal which were not raised in the trial court.[8] On the contrary, our ruling merely allows appellant to argue *what is in evidence* from the voir dire and the *Batson* hearing and *why he should prevail* on his *Batson* claim. Secondly, we are according the State the same privilege. The State is likewise allowed to argue before the appel-

late court the facts developed in the record to support its neutral explanation given in response to appellant's prima facie case, or to controvert the rebuttal evidence offered by appellant in the *Batson* hearing or the comparisons raised on appeal. Our ruling thus allows the State to argue *what is in evidence* to buttress its position that the trial judge did not clearly err in finding no purposeful discrimination.

For the foregoing reasons, we hold appellant was not required to request the trial judge to make his finding upon the *Batson* motion based upon a comparison analysis in order to have that very same evidence considered on direct appeal.[9]

In the instant case, the court of appeals states:

[A]ppellant brings forward testimony from the voir dire which he asserts casts doubt on the prosecutor's explanations. Appellant urges that we compare the individuals that the State struck with those who were not struck and to use these alleged discrepancies to determine whether the State's explanations were credible. . . .

*Young,* slip op. at p. 7. As previously noted *supra,* the court of appeals refused to consider appellant's comparisons in reviewing the trial court's ruling on the *Batson* issue. In this respect, the court of appeals erred, and we remand this cause to that court for consideration thereof. However, in reviewing this evidence, the court

---

8. Compare *Wilson v. State,* 692 S.W.2d 661 (Tex. Cr.App.1984) (Opinion on State's Motion for Rehearing), where Court allows the State to raise for first time on appeal the issue of defendant's standing to challenge validity of a search. *Id.* at 671. The Court states a reviewing court may properly sustain the trial court's denial of a motion to suppress on the ground that the evidence failed to establish standing as a matter of law, even though the record does not reflect that the issue was considered by the parties or the trial court. *Id.* Cf. *Angel v. State,* 740 S.W.2d 727 (Tex.Cr.App.1987) (State may not raise standing for first time on petition for discretionary review).

9. The dissent of course would require just the opposite, but we believe the dissenters fail to appreciate the difference between evidence and argument. Disparate treatment is an argument made from the evidence. The evidence shows

how each venireman was treated, not the argument. To say, as the dissent does, that *Batson,* in the wording " 'The defendant *must show* ' " (dissenting slip opinion page 2) means that the defendant *must argue* aptly demonstrates this confusion.

Suffice to say it would be the height of inconsistency to restrict a defendant on appeal to only those *arguments* he made in the trial court and yet allow the State to raise "standing" *for the first time on appeal* (as we do, see *Wilson v. State,* 692 S.W.2d 661 (Tex.Cr.App.1984). To be consistent we would need to further restrict a defendant on appeal to only those arguments he made to the trial court in his "motion to suppress" or any other motion.

Granted, trial judges must remain attentive, alert and mentally awake during voir dire, but that allusion is all that the majority can find to agree with in the dissent.

of appeals is not to determine whether the prosecutor's explanations are credible, but rather, whether the trial judge's ruling on appellant's *Batson* motion was supported by the record and therefore not clearly erroneous. See *Whitsey*, 796 S.W.2d 707 (Opinion on State's Motion for Rehearing).

The judgment of the court of appeals is reversed, and this cause is remanded to that court for further proceedings not inconsistent with this opinion.

WHITE, J., dissents.

CAMPBELL, Judge, dissenting.

I cannot subscribe to the majority opinion, which reaches a result contrary to the plain meaning of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); our recent holding in *Tompkins v. State*, 774 S.W.2d 195, 202 fn. 6A (Tex.Cr. App.1987), aff'd by an equally divided Court, 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989); Article 35.261 of the Texas Code of Criminal Procedure; and Texas Rule of Appellate Procedure 52(a). The majority's holding is also unfair to trial courts and prosecutors and unreasonably burdensome to appellate courts.

The record reflects that on February 22, 1989, at the conclusion of appellant's voir dire, appellant objected that the prosecutor had peremptorily struck seven of the eight blacks on the venire. Appellant complained that the prosecutor's strikes showed "a pattern" of racial discrimination, and asked the trial court to require the prosecutor to provide explanations for the strikes. The prosecutor, without the court's request, immediately articulated detailed, racially-neutral explanations for all seven challenged strikes. After the prosecutor finished, appellant chose not to cross-examine him. Rather, appellant chose simply to argue to the court that "by using a systematic method of striking each black on the jury, no matter what reason is used, the State has in effect denied the defendant a jury of his peers." Hearing no other evidence or argument, the trial court overruled the *Batson* claim.

On appeal appellant argued *for the first time* that the prosecutor's explanations for three of the peremptory strikes were unacceptable as a matter of law because "[veniremen] with the same or similar characteristics as the challenged [veniremen] were not struck." See *Whitsey v. State*, 796 S.W.2d 707, 714 (Tex.Cr.App.1989) (disparate treatment of veniremen is strong indicator of racial bias). The court of appeals, relying correctly upon our recent holding in *Tompkins*, 774 S.W.2d at 202 fn. 6A, held the point not preserved for appellate review "[b]ecause appellant did not urge the trial court to make [such] comparisons during the *Batson* hearing." *Young v. State*, No. 05–89–00571–CR (Tex.App.— Dallas 1990), slip op. at 7 (unpublished).

We granted review to consider whether our holding in *Tompkins* should remain the law. The majority concludes unwisely that it should not.

### Batson v. Kentucky

The majority's holding today is contrary to the reasoning in *Batson* itself. In *Batson* the Supreme Court held that, as in any equal protection case, *the burden is on the defendant* who alleges discriminatory jury selection to prove the existence of purposeful discrimination. *Batson* at 93, 106 S.Ct. at 1721. To make a prima facie showing of purposeful racial discrimination under *Batson*,[1] a defendant must first show, at a hearing, that the prosecutor has exercised peremptory strikes to remove, from the venire, members of a particular racial group. *Batson* at 96, 106 S.Ct. at 1722. A defendant is, of course, "entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate." *Id.* However, a defendant must do more than merely show that the

---

1. *See also Edmonson v. Leesville Concrete Co.,* —— U.S. ——, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (*Batson* ruling applies to civil cases); *Powers v. Ohio,* —— U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (*Batson* ruling applies even if defendant and improperly excluded veniremen of different races).

prosecutor has peremptorily struck the veniremen in question. "[T]he defendant *must show* that th[is] fact[ ] and any other relevant circumstances *raise an inference* that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Id.* (Emphasis added.) In other words, the defendant *must explain to the trial court* why the totality of the circumstances of the voir dire logically indicates that the prosecutor purposefully discriminated. In determining whether a prima facie case exists, the trial court should, of course, consider all the circumstances of the voir dire that it can remember and that have been pointed out to it by the defendant. But *Batson* imposes no obligation on the trial court to take detailed notes during the entire voir dire regarding everything that transpires or to photographically remember every detail. *Batson* does not require the trial court to make the defendant's equal protection case for him; *the burden always remains on the defendant to argue and prove up his own case.*

If the defendant makes out a prima facie case of racial discrimination, then the burden shifts to the prosecutor to come forward with racially-neutral explanations for his peremptory strikes. *Batson* at 97, 106 S.Ct. at 1723. Once the prosecutor has given his explanations, the defendant has the right to cross-examine him. *Salazar v. State,* 795 S.W.2d 187, 192 (Tex.Cr.App. 1990). The reason the equal protection clause grants the defendant the right of cross-examination is so that he can *show the trial judge* why the prosecutor's stated reasons may indicate bad faith (such as where they reveal disparate treatment of veniremen) or are facially unlawful. The adversarial *Batson* hearing that is the defendant's constitutional right affords him a reasonable opportunity to prove up his equal protection case *in the trial court.* That is all that *Batson* requires or logically should require.

## Tompkins v. State

In *Tompkins,* a direct capital appeal before this Court in 1987, the defendant asked this Court to engage in a comparison *Batson* analysis identical to that in which Appellant Young asked the court of appeals to engage. We refused to do so, because the defendant, "though certainly afforded the opportunity to do so," had not asked the trial court to make such an analysis. *Tompkins,* 774 S.W.2d at 202 fn. 6A. Although this holding, *to which there was no dissent,* appeared in a footnote, it was a holding nonetheless, and nothing the majority says to the contrary can alter that fact.

## Article 35.261

The majority opinion also runs counter to the plain language of Article 35.261 of the Texas Code of Criminal Procedure. That article, obviously intended to codify the ruling in *Batson,* provides in relevant part:

> After the parties have delivered their [juror] lists to the clerk ... and before the court has impanelled the jury, the defendant may request the court to dismiss the array and call a new array in the case. The court shall grant the motion of a defendant for dismissal of the array if the court determines that ... the attorney representing the state exercised peremptory challenges for the purpose of excluding persons from the jury on the basis of their race, *and that the defendant has offered evidence of relevant facts that tend to show that challenges made by the attorney representing the state were made for reasons based on race.* If the defendant establishes a prima facie case, the burden then shifts to the attorney representing the state to give a racially neutral explanation for the challenges. *The burden of persuasion remains with the defendant to establish purposeful discrimination.*

(Emphasis added.) Thus, article 35.261 recognizes, and requires, as did *Batson,* that the burden is always on the defendant to show the trial court why the circumstances of the voir dire prove up purposeful discrimination. Article 35.261 does not require the trial court to remain aware of all the minute details of voir dire or risk reversal on appeal.

## Rule 52(a)

Finally, it should be plain that the majority holding is contrary to the requirements of Rule 52(a) of the Texas Rules of Appellate Procedure, which provides in relevant part: "In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context." There are many rationales for this raise-or-waive rule: that it is a necessary corollary of our adversary system in which issues are framed by the litigants and presented to the trial court; that fairness to all parties requires a litigant to advance his complaints at a time when there is an opportunity to respond to them or cure them; that reversing for error not raised in the trial court permits the losing party to second-guess its tactical decisions after they do not produce the desired result; and that there is something unseemly about telling a trial court it erred when it was never presented with the opportunity to be right. The principle rationale for the rule, however, is judicial economy. If the losing side can obtain a reversal on a point not argued in the trial court, the parties and the public are put to the expense of a retrial that could have been avoided by better lawyering. Furthermore, if the issue had been timely raised in the trial court, it could have been resolved there, and the parties and the public would have been spared the expense of an appeal.[2] All these rationales apply with full force to the instant case.

The majority opinion also places an unreasonable burden on appellate courts, who will now be obligated to comb voluminous voir dire records and engage in tedious, difficult comparison analyses and (perhaps) other analyses. It is no comfort to suggest, as the majority does, that its holding may not apply to capital cases, because applying a different rule there would, in my view, itself be constitutionally suspect.

I dissent.

McCORMICK, P.J., joins this dissent.

Before the court en banc.

### OPINION DENYING STATE'S MOTIONS FOR REHEARING

MILLER, Judge.

The State Prosecuting Attorney's Office and the Dallas County District Attorney's Office have each filed a motion for rehearing in this cause. In its motion, the State Prosecuting Attorney alleges the court of appeals, when reviewing a *Batson*[1] claim, is not required to engage in a comparative analysis of the differences between the peremptorily challenged prospective jurors and those not so challenged when the defendant failed to present any such evidence at trial.[2] The District Attorney contends in his motion that this Court erred "in failing to recognize that evidence brought forward for the first time on appeal may be considered in determining the legal sufficiency of the prosecutor's explanation, but should not be considered in determining the prosecutor's credibility." Implicitly alleged in these motions for rehearing is that this Court should grant the motions in part to resolve a perceived conflict between the holding in this case on original submission, see p. 141, and this Court's holding the following week in *McNairy v. State,* 1991 WL 105620 (Tex.Crim.App. No. 1407–89,

---

2. The raise-or-waive rule is not absolute, of course. We have previously explicated the right-not-recognized exception, *see Black v. State,* 816 S.W.2d 350 (Tex.Cr.App.1991) (Campbell, J., concurring), and other exceptions for certain errors that arguably compromised the basic fairness of a defendant's conviction. *See, e.g., Rabb v. State,* 730 S.W.2d 751 (Tex.Cr.App. 1987). *Batson* error does not fall in either category. *See Mathews v. State,* 768 S.W.2d 731 (Tex.Cr.App.1989).

1. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

2. This same contention is raised in the State's motion for rehearing in *Henderson v. State,* 156 S.W.2d 826 (Tex.Crim.App.1991), which motion was also denied this day.

delivered June 19, 1991). The State's motions for rehearing will be denied for three interrelated reasons: (1) the Court's holding on original submission in *Young* was consistent with general rules for preservation of claims for appellate review; (2) we continue to adhere to the reasoning in the majority opinion on original submission and see no conflict between the holdings in *Young* and *McNairy;* and (3) our ruling on original submission encourages equity in the rules of preservation of error.

On original submission in this case, the Court held that the appellant was not required to request the trial judge to make his findings and conclusions upon the *Batson* motion based upon a comparative analysis in order to have that same evidence considered on direct appeal. See p. 146. By contrast, in *McNairy*, which presented a search issue, the Court concluded the appellant procedurally defaulted his claims on appeal concerning the facial invalidity of the affidavit in support of the search warrant, and the search of the trailer home pursuant to the search warrant being invalid as a continuation of a prior illegal search. The claims were defaulted because, at the pretrial hearing in that cause, the appellant failed to object to the State's introduction of the affidavit and search warrant, and the appellant made no attempt to demonstrate the facial invalidity of the affidavit and warrant or argue the later search of the trailer home was invalidated by the alleged prior illegal search. See pp. 146–147.

■ The holding in *Young* was largely a result of the substantive and procedural aspects of a *Batson* claim. When a defendant lodges an objection based upon *Batson,* he calls into question the motivation behind the prosecutor's peremptory challenges; that is, whether the prosecutor engaged in purposeful racial discrimination in the exercise of his peremptory challenges. This Court has never required that a sufficient *Batson objection* include a comparison by the defendant of the prosecutor's questioning of the challenged and unchallenged prospective jurors. Indeed, as a general rule, a sufficient objection need only be specific enough to apprise the trial judge of the complaint. The complaining party must state the specific ground for the objection, but only if the ground was not apparent from the context. Tex.R.App. Proc. 52(a). *See generally Lankston v. State,* 827 S.W.2d 907 (Tex.Crim.App.1992); *Zillender v. State,* 557 S.W.2d 515 (Tex. Crim.App.1977); and *Ethington v. State,* 819 S.W.2d 854, 858 (Tex.Crim.App.1991).[3] A comparative analysis is not necessary to apprise the trial court that the defendant is asserting an objection to the State's jury selection based upon *Batson* and thus is not necessary to preserve a *Batson* claim for appellate review.

Moreover, a comparative analysis is not a new or different legal theory, from the *Batson* claim asserted in the trial court, upon which a defendant seeks relief on appeal. As stated on original submission, the comparative analysis is merely the argument accompanying the *Batson* claim. See p. 145. The legal theory which the defendant asserts during the *voir dire* process, that the prosecutor has engaged in purposeful racial discrimination, is the same legal contention raised on appeal. The comparative analysis is but an analytical tool that the appellant uses on appeal to show that the trial judge's ruling on his *Batson* claim was not supported by the

---

**3.** Objections on the *Batson* issue have varied, as reflected in the first such cases to be addressed by this Court. In *Henry v. State,* 729 S.W.2d 732 (Tex.Crim.App.1987), the defense counsel lodged the following objection:

> Just for the record, Your Honor, we would respectfully point out that the defendant is black and that there are seven black persons in the array and would respectfully request the Court to instruct the District Attorney not to use his strikes, preemptory (sic) strikes, to eliminate members of any minority race.

> Such an attempt would be an improper use of preemptory (sic) challenges and we would respectfully request that the State not use all of its preemptory (sic) challenges just to strike members of any minority race.

*Id.* at 734–735.

In *Keeton v. State,* 724 S.W.2d 58 (Tex.Crim. App.1987), the record reflected that each time a black veniremember was struck from the panel by the State, defense counsel objected on the basis that the veniremember was the same race as the defendant. *Id.* at 64.

voir dire record and thus was clearly erroneous; it is not the legal theory upon which relief is sought. The legal claim is the same at trial and on appeal: the State used racially motivated peremptory challenges during its jury selection.

In this regard, the holding in *McNairy* is distinguishable. There the defendant moved to suppress methamphetamine seized during the search of his trailer home. At the pretrial hearing on the motion, the defendant argued "primarily the extent and validity of the consent given by [his] landlord, and whether [the police officers] had sufficient justification for entering the trailer to 'secure' the premises." Slip op. at p. 3, n. 1. The defendant presented no evidence and no argument at the hearing regarding the validity of the affidavit supporting the search warrant or the warrant itself. Thus, when he raised these claims on appeal, the court of appeals held the claims advanced on appeal did not comport with the arguments made at the pretrial hearing, and nothing was presented for review regarding the affidavit and search warrant. This Court upheld that decision. Slip op. at p. 10. In *McNairy* the defendant violated the well-established rule that nothing is preserved for review where the defendant's objection made in the trial court differs from the complaint made on appeal. *See Rezac v. State*, 782 S.W.2d 869, 870–71 (Tex.Crim.App.1990); *Thomas v. State*, 723 S.W.2d 696, 700 (Tex.Crim. App.1986), citing *Hodge v. State*, 631 S.W.2d 754, 757 (Tex.Crim.App.1982); *Williams v. State*, 549 S.W.2d 183, 187 (Tex.Crim.App.1977). There was no such violation in *Young*.

The majority opinion in *Young* also considered principles of equity and common sense in reaching its conclusion, although these principles played a lesser part in our holding than did the nature of the *Batson* claim or the general rules governing preservation of error on appeal. Past interpretations of these rules typically resulted in a favorable ruling for the prosecution. The result in *Young* ensures that the ends of justice are met.

On original submission, the majority opinion in *Young* noted the inconsistency, in just one instance, in this Court's preservation of error rules. See p. 146, n. 8–9. That instance is found in *Wilson v. State*, 692 S.W.2d 661 (Tex.Crim.App.1984) (Opinion on State's Motion for Rehearing), which held that the State could challenge for the first time on appeal a defendant's standing to complain of an illegal search or seizure. This Court subsequently applied, even extended, that same rule in *Boyle v. State*, 820 S.W.2d 122, 141 (Tex.Crim.App.1991) (Opinion on State's Motion for Rehearing), where the State contested for the first time, in *a motion for rehearing* on direct appeal, the appellant's standing to assail the search of a truck. Pursuant to our discretionary authority, this Court considered the State's assertion that the third party consent obtained from the owner of the trucking company was valid, thereby making the search of the appellant's truck legal. 820 S.W.2d at 141.[4]

Another longstanding rule which aids the State on appeal is found in *Spann v. State*, 448 S.W.2d 128 (Tex.Crim.App.1969). The rule is:

When the trial court's ruling on the admission of evidence is correct, though for a wrong or insufficient reason, it will not result in a reversal if it is admissible for any reason.

448 S.W.2d at 130.[5] In *Spann*, the State was allowed to use for impeachment purposes the defendant's oral statements which he made to the arresting officer regarding his shooting of two persons. The Court recognized the rule that incriminating statements made by an accused, while under arrest, which would not be admissible as original evidence, may not be used

---

4. By using *Wilson* and *Boyle* as examples of inconsistency in preservation of error rules I do not mean to imply that the holding in either case is incorrect. Rather, I cite these cases to encourage equitable treatment of the State and the appellant on waiver issues.

5. *Spann* cites several authorities for the rule: 5 Tex.Jur.2d 606, Sec. 402; *Boney v. State*, 110 Tex.Cr.R. 371, 7 S.W.2d 961; *Moreno v. State*, 170 Tex.Cr.R. 410, 341 S.W.2d 455; *Venable v. State*, Tex.Cr.App., 397 S.W.2d 231.

for impeachment. *Id.* at 129. Nevertheless, the Court noted that such statements may be admissible under the res gestae exception, and the Court concluded the defendant's statements regarding the shooting were admissible as res gestae. *Id.* at 130. Thus, the Court did not reverse the defendant's conviction, even though the defendant's statements were improperly admitted, because the statements were admissible on another basis. What is troubling with this ruling is that there is nothing in the Court's opinion which indicates the State even advanced the res gestae theory of admissibility at trial or on appeal.

The same was true in *Miles v. State*, 488 S.W.2d 790 (Tex.Crim.App.1972). In that case, the trial judge admitted into evidence the defendant's oral statement that he "cut the boys," referring to the victims of a stabbing incident. The statement was admitted as part of the res gestae of the *offense*. 488 S.W.2d at 791. On appeal of the murder conviction, this Court reviewed the evidence and decided the trial court had sufficient evidence to conclude the statement was res gestae of the *arrest*. *Id.* at 792. The trial judge's error in admitting the evidence at trial for the wrong reason, however, was inconsequential because "[i]f the decision is correct on any theory of law applicable to the case, it will not be disturbed." [6] *Id.* (citations omitted). Once again, nothing in the opinion suggested the State offered the correct legal theory for admissibility at either the trial or appellate level.

Consequently, this Court disagrees with the State's position which would require a defendant to present a comparative analysis argument to the trial court to have those same facts and circumstances from the voir dire considered on appellate review of a *Batson* claim. Under our analysis, that *evidence* (e.g., the disparate treatment of venirepersons in the State's jury selection) is before the trial judge during the voir dire process for his consideration on the *Batson* claim. Although a comparative analysis is not a necessary element of a *Batson* objection which must be made at the trial level or else be waived, it will have its greatest impact at the trial court level. *See* discussion at p. 144. With this comparative analysis, the defendant may, *inter alia,* present persuasive evidence of disparate treatment of venirepersons, show a pattern of peremptory strikes against minority venirepersons, discredit the credibility of the prosecutor, and call into question the racial neutrality of the prosecutor's explanations for his peremptory challenges.

By contrast, the impact of the comparative analysis may be slight at the appellate level given the appellate standard of review for a *Batson* claim. The "clearly erroneous" standard of review accords great deference to the trial court's findings and conclusions because these rulings are based in part upon a credibility determination which is not reviewable by the appellate court.[7] The effectiveness of a comparative analysis is therefore lessened, yet it may be the only method by which the appellant can

---

**6.** See also *Dugard v. State,* 688 S.W.2d 524, 530 n. 2 (Tex.Crim.App.1985), citing *Sewell v. State,* 629 S.W.2d 42 (Tex.Crim.App.1982) (panel opinion); *Miles,* 488 S.W.2d 790, and *Spann,* 448 S.W.2d 128, for this same principle.

**7.** In *Williams v. State,* 804 S.W.2d 95 (Tex.Crim. App.1991) (Opinion on Remand), the trial court made its findings of fact and conclusions of law on the defendant's *Batson* claim based upon the record established during the initial voir dire and the evidence adduced at the *Batson* hearing. 804 S.W.2d at 97. The evidence from the hearing consisted only of the prosecutor's testimony as to why he struck each venireperson and local defense lawyers' testimony that they were unaware of blacks serving on any juries in cases they had tried in Harris County. *Id.* at 102, 107.

In his brief on appeal, the appellant claimed that analysis of the prosecutor's explanations revealed a "pattern of deception" and differences in the manner in which the prosecutor questioned the struck black venirepersons and the selected white venirepersons. *Id.* at 104. Apparently, from the opinion, appellant engaged in this comparative analysis for the first time on appeal from the *Batson* hearing. The appellant failed to show, however, the trial judge's ruling was clearly erroneous in part because he made only "general allegations as to disparate treatment" and this was "insufficient to sustain his burden of persuasion." *Id.* at 107. The record from the voir dire of the challenged venirepersons supported the prosecutor's explanations for his strikes against them and revealed a meaningful examination by him of each challenged person.

argue the circumstances of the voir dire examination, which are presented to the appellate court via the cold record, do not support the trial judge's findings and conclusions. The appellate court does not consider the comparative analysis to decide whether the prosecutor's explanations were believable, but rather looks to this evidence to determine whether the trial judge's findings and conclusions are supported by the facts in the record.[8]

In sum, the comparative analysis is not only an analytical tool which a defendant may wield at trial to rebut a prosecutor's facially racially neutral explanations for his peremptory challenges, but is also a tool which a defendant may use on appeal to argue the trial judge's ruling is clearly erroneous. We reiterate that the comparative analysis is not a tool to be used by the appellate court to judge the credibility of the prosecutor, but rather a tool used when determining if the trial court's decision was clearly erroneous. That determination remains solely within the domain of the trial judge as finder of fact at a *Batson* hearing.

In this case, the appellant Young did not violate any of our well-established rules regarding the adequacy of objections necessary to preserve a complaint for appellate review, and we are not persuaded to apply a more restrictive rule (as the dissent does on original submission) to the appellant in this cause, particularly in light of the past leniency this Court has afforded the State.

On the basis of the foregoing reasons, the State's motions for rehearing are denied.

BENAVIDES, Judge, dissenting.

On original submission, I joined the opinion of the Court, voting for the reasons expressed therein to reverse the Fifth Court of Appeals and to remand this cause for additional appellate review. I am now persuaded, upon further reflection and study, that our decision on original submission was in error. Accordingly, I would grant the State's motions for rehearing in this cause and affirm the lower court's judgment.

I.

In the first place, it is now evident to me that our original opinion misunderstood the significance of controlling precedent by characterizing footnote 6A of *Tompkins v. State*[1] as "dictum."[2] Apparently, this Court is now inclined to view footnotes as unsuitable for the expression of binding precedent. If we in fact intend to regard footnotes as superfluous, we ought to eliminate them from our opinions altogether. Neither precedential purpose nor direction to bench and bar is served when we clutter the authoritative decisional law with inessential musings that the Court may later have to repudiate.

Be that as it may, it is apparent from the *Tompkins* opinion itself that footnote 6A was not gratuitous or otherwise unnecessary, but was added specifically to address matters raised by the appellant in a supplemental brief. It was not just an interesting parenthetical remark. Accordingly, *Tompkins* is not fair game for an emerging anti-footnote policy in this case. Indeed, the now controversial footnote 6A was so critical in *Tompkins* that the outcome itself would, in all likelihood, have been different except for the holding which appears only in that footnote. To label it "dictum," therefore, is patently incorrect.[3]

What follows is that *Tompkins*, unless it was wrongly decided, should control dispo-

---

8. Compare *Emerson v. State*, 820 S.W.2d 802 (Tex.Crim.App.1991), where the defendant employed a comparative analysis in the trial court to make a prima facie case of racial discrimination in the State's use of its peremptory challenges. This Court held that the defendant's "undisputed observations" of the State's voir dire examination constituted valid proof in support of his prima facie case. *Id.*, at 804.

1. 774 S.W.2d 195 (Tex.Cr.App.1987).

2. See p. 144, fn. 5.

3. To do so in a footnote, as we did on original submission, only compounds the irony. If footnotes have no precedential value, what precedential value should we accord footnote 5 of the opinion holding that footnote 6A of *Tompkins* was "dictum"? Is it "dictum" as well?

sition of the instant cause. Of course, if it was wrongly decided, it should be overruled expressly, as its essential holding cannot be reconciled with the majority opinion in this case. But, after careful reconsideration of the matter, I believe that *Tompkins* does, indeed, provide the appropriate rationale for decision in cases such as this one. Thus, failure to follow it here represents a disregard for precedent which, as a court of last resort, we should be loath to countenance.

## II.

Here, the appellant would like the Court of Appeals to consider some circumstances of the jury selection process, which it declined to consider before, in reviewing the trial court's adverse disposition of his *Batson*[4] claim. These circumstances include the number and kinds of questions propounded by the prosecuting attorney to prospective jurors during *voir dire*. Appellant maintains that these circumstances would reveal a manner of interrogation fraught with racial prejudice, inasmuch as black veniremembers were questioned in a far more perfunctory way than were those seriously regarded by the State as candidates for jury service.

The argument is promising if supported by evidence. Undoubtedly, significant differences in the way prospective jurors are questioned may expose underlying prejudices of the questioner. And, where the questioner's motives are at issue, such circumstances are clearly relevant. But during *voir dire*, a prosecutor's motives are not at issue, and the questions propounded to prospective jurors are not evidence.

Once a *Batson* motion has been made, of course, new questions of fact are presented, and an evidentiary hearing becomes necessary to resolve them. The burden of proof on these questions falls to the mov-

ant, and he is obliged to meet that burden, if he can, in the same manner as litigants with the burden of proof on other factual questions—that is, by the production of evidence.[5] In the *Batson* context, such evidence must be sufficient to prove that the prosecuting attorney actually exercised peremptory challenges against veniremembers on account of their race.[6] Although the evidence may come from a number of possible sources, the most fertile ground after *Batson* is the *voir dire* examination itself.

Still, even a relatively brief *voir dire* by both parties typically yields a great deal of dialogue which has nothing specifically to do with the *Batson* question. And because the issues at *voir dire* necessarily do not include the motives of prosecutors, one would not expect the entire *voir dire* to be relevant at a subsequent hearing to determine those motives. For this reason alone, the notion that a trial judge must automatically revisit the entire *voir dire* examination *sua sponte* every time one party accuses the other of racial prejudice is untenable. More to the point, it is contrary to elementary principles of adversary procedure. A trial judge is never obliged to sort through evidence, even when it has been formally tendered, to cull the relevant from the irrelevant.[7] Surely, we should not enforce a more rigorous rule against him when, as here, the evidence was never properly offered at all.

The majority on original submission took the position that nothing in *Batson* itself requires "that discrepancies in the voir dire of the various panel members must be brought to the trial judge's attention by the accused in order to preserve for appellate review the issue of the constitutionality of the prosecutor's peremptory challenges."[8] Evidently, we lost sight on original submis-

---

4. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); Art. 35.261, V.A.C.C.P.

5. *Batson,* 476 U.S. at 93, 106 S.Ct. at 1721.

6. *Hernandez v. New York,* 500 U.S. ——, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

7. *See* Goode, Wellborn and Sharlot, *Guide to the Texas Rules of Evidence: Civil and Criminal,* 33 Texas Practice § 103.2 at 11–14 (West 1988) (hereinafter "Goode"); Cleary (ed.), *McCormick on Evidence,* § 52 at 131 (West 1984) (hereinafter "Cleary").

8. See p. 145.

sion of the difference between the preservation of a complaint and the merits of its disposition. The only issue on appeal in this case is whether the trial judge's decision was supported by the evidence, was clearly erroneous, was an abuse of discretion, or whatever the current fashion is to call it.[9] It comes to the same thing. The appellate court's task is to review the evidence. Neither this Court nor the Court of Appeals would be doing that if appellant's complaint had been forfeited by a procedural default at trial.

The majority opinion points out that "a comparative analysis is an argument of the evidence presented to the trial judge during voir dire and the *Batson* hearing[,]" and is not evidence itself.[10] Certainly, this is true. And it is equally certain that litigants are not obliged by the law to argue their cases at the conclusion of evidence. After even the most complex, protracted trial, the parties may decline summation or jury argument altogether. Yet, the factfinder, whether judge or jury, is still obliged to make a decision on the whole evidence presented, which decision is reviewable for its correctness on appeal. To say that the appellant in this case was required to argue the evidence before he was entitled to a decision from the factfinder on the basis of such evidence is simply mistaken.

But it is no mistake to hold that the factfinder need not consider information which was not received in evidence, even if aware of that information. Indeed, it is unlawful for him to do so, as should be apparent from the abundant case law of this Court holding it grossly improper for jurors to make decisions based in whole or part upon concededly relevant information known to them from a source other than trial.[11]

Even if the circumstances of *voir dire* could be considered evidence in this case, such evidence was certainly not admitted during jury selection to discover the ulterior motives of lawyers. Rather, it was necessarily received only to test the qualifications of prospective jurors.[12] And because evidence received for one purpose is not available for another unless reoffered,[13] the evidence received during *voir dire*, or a circumstance surrounding its receipt, does not automatically constitute evidence at a subsequent *Batson* hearing, even to the extent it might be relevant for that purpose. If a litigant desires that evidence or circumstances in the record be considered by the trial judge at a later evidentiary hearing on a different issue, it behooves him to offer it in the usual way at that hearing or simply to ask that the trial judge judicially notice it as provided by law.[14]

This procedure may seem unnecessarily slavish or hypertechnical to some practitioners, especially in circumstances such as those presented here. But these procedural mechanisms have the same practical importance in the present context as they do at every other stage of an adversary proceeding. They ensure that the most fundamental principles of fairness and order will be observed invariably throughout trial. With respect to the admission of evidence, they assure that an opposing party will always know precisely what is offered by his opponent and for what purpose. This is so that he can interpose objection if the law makes one available, or offer his own evidence in rebuttal or explanation if it does not.[15] Neither course is a realistic alternative for him if, instead, the evidence is received without his knowledge, or without his knowing the issue to which it is addressed.

**9.** *See Whitsey v. State,* 796 S.W.2d 707, 739–740 (Tex.Cr.App.1989) (Teague, J., concurring).

**10.** See p. 145.

**11.** *See generally* 16 Texas Digest 2d, *Criminal Law* 925½ (West 1983).

**12.** *See* Arts. 35.10 through 35.21, V.A.C.C.P.

**13.** *See* Tex.R.Crim.Evid. 105(b); Goode, § 105.1 at 26–27; Cleary, § 51 at 125.

**14.** *See* Tex.R.Crim.Evid. 103, 201.

**15.** Cleary, § 51 at 122.

Application of these basic tenets to the present case is not strained. Without some reasonably clear indication from appellant of the circumstances from *voir dire* upon which he intended to rely for proof of a racial motive, the State was effectively denied a chance to object to that evidence or to meet it with controverting evidence. And the right to an opportunity for objection in this context was not merely an empty formality. Had appellant attempted the simple expedient of offering the entire *voir dire*, a relevancy objection from the State would have been well-founded because, as has already been noticed, most of the jury selection process in this and in other cases does not bear upon the questions at issue in a *Batson* hearing. Unless the appellant could successfully limit his offer only to those portions of the *voir dire* relevant to the matters in issue, the trial judge would have been within his discretion in any case to disallow all of the proferred evidence.[16]

These are the necessary and unremarkable consequences of a fair and orderly system governing virtually all litigation, including *Batson* hearings. Here, when the trial judge convened a hearing for the purpose of receiving evidence, appellant rested and closed without producing any. He called no witnesses, offered no transcripts, and made no request that the court judicially notice relevant circumstances of the *voir dire* examination or testimony offered for another purpose during the jury selection process. The State was, therefore, entitled to resume trial in the certain belief that appellant had offered no evidence whatsoever to meet his burden of proof. Yet a majority of this Court would force upon the trial judge a duty to search alone for the most arcane evidence of racial prejudice in a long transcript of jury selection, to then notice that evidence without any request from its beneficiary or opportunity for its opponent to object, and finally to make a critical credibility decision based upon such evidence without asking any further explanation from either side. Let me be no longer a part of that majority, for its hold-ing is repugnant to the legal system of which I have been a member for over twenty years.

I do not dispute for a moment that racial prejudice is an evil of unparalleled magnitude in the history of this country. I am unalterably committed to its opposition under all circumstances. But it is one thing to allege bigotry, and quite another to prove it. In the final analysis, I would not like to have it said of me that I found an attorney representing the State of Texas guilty of such serious misbehavior without affording him an opportunity to rebut or explain the evidence against him. Because, in my view, a majority of the Court continues to encourage just such a result in this case, I dissent.

The judgment of the Fifth Court of Appeals should be affirmed.

Having dissented on original submission, McCORMICK, P.J., and CAMPBELL and WHITE, JJ, join the opinion of BENAVIDES, J., dissenting to the denial of the State's Motions for Rehearing.