# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00360-CR

**Timmy Rector, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT NO. 3020279, HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Timmy Rector appeals his conviction for aggravated assault. *See* Tex. Pen. Code Ann. § 22.02 (West 2003). He argues that the trial court erred by overruling an objection that the State peremptorily struck a black man from the jury panel because of his race. We affirm the judgment of the trial court.

## BACKGROUND

A jury in this case convicted appellant, a black male, of aggravated assault and assessed punishment at thirteen years' confinement and a fine of $6,500. During the jury-selection process before trial, the State used one of its ten peremptory challenges to exclude venire member M.C., a black male. Before the jury was sworn, appellant made an objection to the use of the peremptory challenge, arguing that the exclusion of M.C. was racially motivated. *See Batson v.*

*Kentucky*, 476 U.S. 79 (1986); *see also Hernandez v. New York*, 500 U.S. 352 (1991) (defendant must challenge the peremptory strike on a venire member before trial judge and rebut prosecution's proffered reason). The trial court requested an explanation from the State for the peremptory challenge to M.C. In response, the State replied that "he didn't answer hardly any of the questions in the questionnaire, but most of them were left blank." The State added that "additionally, he had a problem with one witness, convicting on the basis of one witness." Appellant objected to M.C.'s exclusion and requested that he be placed on the jury. The court responded by noting, "What about the fact that he didn't list his occupation and several things he left blank on his jury questionnaire?" Appellant replied that the State had opportunities to ask M.C. about his occupation during the *voir dire*. Appellant maintained his *Batson* objection, which the trial judge overruled. This appeal followed appellant's conviction.

## DISCUSSION

In his sole issue, appellant argues that the trial court erred by overruling the *Batson* objection. In particular, he asserts that the state peremptorily struck a black man from the jury panel because of his race. *See Batson*, 476 U.S. 79. We disagree.

When appellant makes a *Batson* challenge, the ruling of the trial court will be overruled only if it is clearly erroneous. *Hernandez*, 500 U.S. at 368. We view the evidence presented at the *Batson* hearing in the light most favorable to the trial court's ruling, and we will not reverse the ruling unless we have a firm conviction that a mistake has been committed. *Robinson v. State*, 851 S.W.2d 216, 226 (Tex. Crim. App. 1991); *Keeton v. State*, 826 S.W.2d 861, 870 (Tex. Crim. App. 1988). Therefore, our role is "not to determine whether the prosecution's explanations

are credible, but rather, whether the trial judge's ruling on appellant's *Batson* motion was supported by the record and therefore not clearly erroneous." *Young v. State*, 826 S.W.2d 141, 146-47 (Tex. Crim. App. 1991).

A *Batson* challenge comprises three parts: (i) the defendant must make a *prima facie* case that the State exercised a strike based on race; (ii) the burden then shifts to the prosecution to give a race-neutral justification for the strike; and (iii) the defense must respond by refuting the prosecution's claim and proving purposeful discrimination. *Batson*, 476 U.S. at 97-98. When making his *Batson* challenge, appellant asserted that M.C. was the only black male on the panel and that the State's exclusion of M.C. was not based on a race-neutral reason. The trial court did not expressly address whether appellant had made a *prima facie* case that M.C.'s exclusion was based on race, the first prong of a *Batson* challenge. However, that issue was made moot when the State offered a race-neutral explanation before the court made an inquiry into the first prong. *See Johnson v. State*, 68 S.W.3d 644, 649 (Tex. Crim. App. 2002). In addition, appellant does not challenge the *Batson* ruling on the grounds that the State failed to give a race-neutral justification for the strike.

Thus, we need only examine the third prong of the *Batson* challenge: whether appellant refuted the State's claim and proved purposeful discrimination. The reasons offered by the State for using a peremptory strike need not be at the level of a challenge for cause, but must only be plausibly race-neutral. *Hernandez*, 500 U.S. at 352. A defendant's failure to offer any real rebuttal to a proffered race-neutral explanation can be fatal to the claim. *Chamberlain v. State*, 998 S.W.2d 230, 236 (Tex. Crim. App. 1999).[1] In addition, a venire member's "initial lack of belief in

---

[1] The court gave an example of what it considered a "real" rebuttal—when a defendant establishes that no white venire members with views similar to the struck minority venire member

a case with one eyewitness is a plausible reason to strike her as not so favorable to the State, even though she later said she could follow the law." *Vargas v. State*, 838 S.W.2d 552, 555 (Tex. Crim. App. 1992).

Appellant first argues that one of the State's reasons for the strike—that M.C. indicated that he would have difficulty convicting on the basis of one witness's testimony—misrepresents what M.C. stated during *voir dire*. Not including M.C., five venire members indicated to the prosecutor that they would have difficulty convicting on the basis of one witness's testimony. All were struck from the jury by the prosecution except one.

At the *Batson* hearing, the following dialogue occurred:

[State]: My last question. I will ask you to raise your hand if you feel this way because it is real important: If there were only one witness to a crime and that witness testified and you believed that witness beyond a reasonable doubt, if you were not able to convict based on that, please raise your hand

. . . .

M.C.: I have a question about that. I guess [it] also depends on whether there is evidence corroborating what the witness is saying. Obviously, the witness is saying he saw Bob walk up to Joe, pull out a gun and shot Joe, this is an example, then, yes, I believe that. If the witness says they were standing in their yard, they saw Bob walk into Joe's house, the screen door closed, Bob stood there, heard a gunshot, and then watched him run away. Maybe not. If there is someone else in the house, they could have done it.

[State]: I understand.

M.C.: Something corroborating what the witness is saying or—

_____

were removed by peremptory challenge. *Chamberlain v. State*, 998 S.W.2d 230, 236 (Tex. Crim. App. 1999).

[State]: Think we are talking more about eyewitness. Eye witnessing something.

M.C.: Yeah. You are talking about somebody specifically saw—

[State]: You are okay with it?

M.C.: Yes, but there are circumstances you have to look out for.

We could interpret M.C.'s response to the State's questions either as disagreeing with the proposition that one could convict on the basis of the testimony of one eyewitness or as questioning the prosecutor as to the meaning of the question. Because the former is a reasonable interpretation of the exchange, the trial court, in denying the *Batson* challenge on this ground, was not clearly erroneous. *See Vargas*, 838 S.W.2d at 555; *Young*, 826 S.W.2d at 146-47.

Next, appellant relies upon a comparison analysis of the juror questionnaire forms to prove a racial motivation for the removal of a black male from the jury panel. Comparison analysis is a tool used to determine discriminatory intent by analyzing the treatment of similarly situated venire members. *Tompkins v. State*, 774 S.W.2d 195, 202 (Tex. Crim. App. 1987). Several non-exhaustive factors may show disparate treatment of prospective jurors, including: (1) if the State failed to question any of the minority jurors but struck them anyway; (2) if the State struck minority jurors who gave answers similar to those of majority jurors whom the prosecutor did not strike; and (3) if the State struck minority jurors who had the same characteristics, such as professional, social, or religious characteristics, as majority jurors whom the State did not strike. *Young*, 826 S.W.2d at 205.

Because the State challenges appellant's use of a comparison analysis of all of the juror questionnaires, we must first decide whether appellant can employ a comparison analysis even

though he did not enter the questionnaires into evidence at the *Batson* hearing. The general rule prohibits the use of juror-information cards as a basis for comparison on appeal if those same cards were not introduced into evidence at the trial court. *Vargas*, 838 S.W.2d at 556. It would be inconsistent to give great deference to a trial court's ruling that is supported by the record and at the same time analyze that ruling based on information that was "not in evidence *nor presented to the trial court at the time of the hearing*." *Id.* at 556-57 (emphasis added).

Appellant contends, however, that this case fits within an established exception to this rule. *See Cornish v. State*, 848 S.W.2d 144, 145 (Tex. Crim. App. 1993). Cornish was convicted of involuntary manslaughter and appealed a *Batson* ruling by relying on juror information cards that had not been entered into evidence. *Id*. At the *Batson* hearing, he attempted to enter the juror information cards into evidence as part of a comparison analysis. *Id*. The court responded that "the cards will speak for themselves." *Id*. Cornish did not offer any evidence on the record or perfect a bill of exception. *Id*. The court of criminal appeals relied on *Heberling v. State*[2] to rule that evidence not formally introduced into the record may still be considered on appeal if the evidence had been treated by the trial court and the parties as though it had been admitted. *Id.* The court then determined from the limited exchange between the attorneys and trial court that "the parties and the trial judge regarded the juror information cards as a significant part of the evidence upon which a resolution of appellant's *Batson* claim would depend." *Id.* The court thus allowed the use of

---

[2] 834 S.W.2d 350 (Tex. Crim. App. 1992). *Heberling* was not a *Batson* challenge but was related to a broader dispute about the ability to use information presented to the trial court, though never actually entered into evidence, to convict a defendant. *Id.* at 355.

comparison analysis and the juror-information cards and remanded to the court of appeals for a new factual determination taking into account the juror-information cards. *Id.*

In this case, the court entered into evidence the juror questionnaires of M.C. and one other, juror number thirty. All parties also discussed the content of the questionnaires of some other venire members. For example,

[Defense Counsel]: I am making a Batson challenge as to Number 11, [M.C.]. For the record, my client is a black male and [M.C.], I believe, is the only black male on the jury.

The Court: Objection to the panel.

[Defense Counsel]: Panel. Sorry. And I am making a Batson challenge. Exclusion of [M.C.] was on race and not race neutral reason.

The Court: What was the State's reason for striking him?

[State]: He didn't answer hardly any of the questions in the questionnaire, but most of them were left blank.

The Court: Introduce that.

[State]: Sure. One other individual, Number 30, struck her.

The Court: Put that in the file marked as Court's Exhibit.

[State]: Additionally, he had a problem with one witness, convicting on the basis of one witness. Reasonable doubt. Number 30 as well. Judge, for the record, we did not strike Number 40 in an effort —

[Defense Counsel]: Put on the record, this goes back to my original objection . . . Think that is the only objection I could see him on, is the question about would he convict on the basis of one witness. We think that under that decision that question was improper and as he is the only black male on the jury, and my client is a black male, we object to his exclusion based on that and ask that he be put on the jury.

7

| | |
|---|---|
| The Court: | What about the fact that he didn't list his occupation and several things he left blank on his jury questionnaire? |
| [Defense Counsel]: | Well, we would say they had a chance in voir dire to ask him those questions. We are still going to urge a Batson challenge. |
| The Court: | Your objection is overruled. Challenge is denied. |

In this case, the parties and the judge regarded the juror questionnaires of M.C. and jurors eleven, thirty, and forty as a significant part of *voir dire*. *See Cornish*, 848 S.W.2d at 145. Thus, we might be able to include the non-admitted questionnaires of jurors eleven and forty as part of the record. *See id*. However, because the discussion in the *Batson* hearing referred to the racial composition of the jury panel and because the claim on appeal concerns disparate treatment between persons of different races on the venire, in the interest of justice we will consider all of the questionnaires.[3]

We now consider the substance of appellant's disparate-treatment argument—that another jury member, a white female, left a number of blanks comparable to M.C. on her jury questionnaire. After discounting the questions on the questionnaire relating to a spouse or child (of which M.C. had none), M.C. still left almost twice as many questions blank as any of the final jury members. Another member of the venire, a white female, left most of her questionnaire blank and was also struck. As a result, our analysis of the jury questionnaires does not reveal any disparate treatment between white and black venire members. Thus, we cannot find that the court was clearly

---

[3] We note, however, that the final jury of twelve contained one black female, six white males, one Asian male, three white females, and one Hispanic male.

erroneous in denying appellant's motion on this ground. *See Robinson*, 851 S.W.2d at 226; *Keeton*, 826 S.W.2d at 870.

Because we have no firm conviction that a mistake has been committed, the ruling of the trial court must be affirmed. *See Young*, 826 S.W.2d at 146-47. We overrule appellant's issue.

## CONCLUSION

Because we overrule appellant's sole issue, we affirm the judgment of the trial court.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed: April 8, 2004

Do Not Publish

9